**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL J. BOST; LAURA POLLASTRINI; and SUSAN SWEENEY,<br><br>    Plaintiffs,<br><br>v.<br><br>THE ILLINOIS STATE BOARD OF ELECTIONS; and BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Board of Elections,<br><br>    Defendants. | No. 1:22-cv-02754<br><br>Hon. John F. Kness |

**DEMOCRATIC PARTY OF ILLINOIS' OPPOSED MOTION TO INTERVENE AS DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 24, the Democratic Party of Illinois ("DPI") moves to intervene as a defendant in the above-titled action. This motion is undeniably timely: the matter was only recently initiated, the named Defendants have not yet responded to the Complaint, and nothing of substance has occurred in the case. The initial status conference is not scheduled to take place until August 9, 2022, nearly two months from now. DPI is entitled to intervene as of right under Rule 24(a)(2) because it has an interest relating to the subject matter of the action that will be impaired should Plaintiffs be successful, and DPI's interests are not adequately represented by the existing parties to the action. In the alternative, DPI requests that the Court grant it permissive intervention under Rule 24(b).

In accordance with this Court's Updated Motions Policy, DPI sought the named parties' agreement to this motion. DPI has been advised that Plaintiffs oppose the motion to intervene, and

1

Defendants take no position. DPI is submitting, together with this motion, a separate statement setting forth the parties' competing proposed briefing schedules for this motion.

## BACKGROUND

At issue in this litigation is 10 Ill. Comp. Stat. Ann. § 5/19-8(c) (the "Ballot Receipt Deadline"), a provision in Illinois law that ensures that ballots cast by lawful voters that are received in the mail by election officials in the 14 days after the election are counted, provided that: (1) they are postmarked on or before election day, or (2) if the U.S. Postal Service fails to postmark them, the ballot certification is dated on or before Election Day.[1] This has been the law in Illinois since 2015 and Illinois' acceptance of mail ballots received after Election Day goes back another decade. Without this law, the millions of Illinois voters who vote by mail risk disenfranchisement, despite timely casting their ballots, due to delayed mail delivery and inconsistent postmarking practices.[2] Illinois is far from alone in allowing for the counting of vote-by-mail ballots delivered after election day—17 other states, the District of Columbia, Puerto Rico, and the Virgin Islands also have extended ballot receipt deadlines.[3]

Nevertheless, Plaintiffs, Illinois voters and candidates for federal office, brought this lawsuit against the State Board of Elections and its Executive Director on May 25, 2022, claiming that Illinois's Ballot Receipt Deadline violates the U.S. Constitution and conflicts with Congress's

---

[1] The vote-by-mail process in Illinois requires a voter to seal their ballot in an envelope with a certification that the voter must date and sign under penalty of perjury. *See* 10 Ill. Comp. Stat. Ann. 5/29-10; Vote by Mail, Mclean County Government, https://www.mcleancountyil.gov/votebymail (last visited June 15, 2022).

[2] In the last federal election, one of every three votes in Illinois was cast via mail ballot. *See, e.g.*, Marie C. Dillon, *Lessons Learned from the November 2020 Election*, Better Gov't Association (Dec. 28, 2020), https://www.bettergov.org/news/lessons-from-the-november-2020-election/.

[3] Tbl. 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots, Nat'l Conference of State Legislatures (Mar. 15, 2022), https://www.ncsl.org/research/elections-and-campaigns/vopp-table-11-receipt-and-postmark-deadlines-for-absentee-ballots.aspx.

command that election day take place on the "first Tuesday after the first Monday in November." Compl. ¶ 3. Specifically, Plaintiffs contend that "Illinois has expanded Election Day by extending by 14 days the date for receipt and counting of vote-by-mail ballots." Compl. ¶ 4. The Complaint includes three causes of action: (1) Count I alleges that the Ballot Receipt Deadline causes Plaintiffs' votes to be diluted in violation of the First and Fourteenth Amendments to the U.S. Constitution, *id.* ¶¶ 38–43; (2) Count II contends that by counting ballots received after Election Day, Defendants violate Plaintiffs' rights as candidates under the First and Fourteenth Amendments to the U.S. Constitution, *id.* ¶¶ 44-48; and (3) Count III claims that the Ballot Receipt Deadline violates the federal election day statutes, 2 U.S.C. § 7 and 3 U.S.C. § 1, *id.* ¶¶ 49-60. To remedy their purported injuries, Plaintiffs ask this Court to permanently enjoin Defendants from enforcing the Ballot Receipt Deadline, and instead require that in all future elections, all vote-by-mail ballots received after election day be rejected, regardless of whether the ballot was voted, dated, and timely mailed. *Id.* at 11.

This is not the first time that litigants have attempted this type of claim. In 2020, several courts considered nearly identical challenges to post-election day ballot receipt deadlines around the country, and all failed. *See, e.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353-54 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508, 209 L. Ed. 2d 544 (2021) (finding federal law does not provide for when or how ballot counting occurs . . . and that the federal election day statutes "can, and indeed do, operate harmoniously" with state laws setting post-election day absentee ballot receipt deadlines); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 359 (D.N.J. 2020) ("Although federal law prohibits New Jersey from canvassing ballots cast after Election Day, it is within New Jersey's discretion to choose its methods of determining the timeliness of ballots, so long as there is no appreciable risk

3

of canvassing untimely ballots"); *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1004 (D. Nev. 2020) (dismissing complaint challenging post-election day canvassing of vote-by-mail ballots for lack of standing finding, among other things, alleged vote-dilution was impermissibly speculative); *see also Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 372 (Pa. 2020), *cert. denied sub nom. Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 209 L. Ed. 2d 164 (2021) (allowing a three day extension of the mail ballot receipt deadline to account for U.S. Postal Service delivery timelines and avoid disenfranchisement and noting that "Pennsylvania's election laws currently accommodate the receipt of certain ballots after Election Day, as it allows the tabulation of military and overseas ballots received up to seven days after Election Day").

DPI is entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Plaintiffs' challenge to the Ballot Receipt Deadline threatens to force DPI to divert significant resources to educating voters as to a crucial legal change shortly before a federal election, and further threatens disenfranchisement of DPI's members and constituents due to no fault of their own. Intervention is needed to protect DPI's substantial and distinct legal interests, which will otherwise be inadequately represented in this litigation. In the alternative, DPI requests permissive intervention under Rule 24(b). In accordance with Rule 24(c), Proposed Intervenor has also attached a Motion to Dismiss Plaintiffs' Complaint as Exhibit 1.

## LEGAL STANDARD

Parties may intervene as of right under Rule 24(a)(2) when four requirements are met: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Zurich Cap. Markets Inc. v. Coglianese*, 236 F.R.D. 379, 383 (N.D. Ill. 2006) (quotation marks omitted). "Courts should construe Rule 24(a)(2) liberally and

should resolve doubts in favor of allowing intervention." *Michigan v. U.S. Army Corps of Eng'rs*, No. 10-CV-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010). "In accordance with this liberal construction, courts must accept as true the non-conclusory allegations of the motion a proposed intervenor makes." *Elouarrak v. Firstsource Advantage, LLC*, No. 1:19-cv-03666, 2020 WL 291364, at *1 (N.D. Ill. Jan. 21, 2020) (quotation marks omitted). "[A] court should not deny a motion to intervene unless it is certain that the proposed intervenor cannot succeed in its case under any set of facts which could be proved under the complaint." *U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *2 (citing *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)).

Under Rule 24(b), the Court may, "[o]n timely motion, . . . permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "The purpose of the timeliness requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). Permissive intervention should not be denied solely because a proposed intervenor failed to prove an element of intervention as of right. *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (finding permissive intervention would have been appropriate even if requirements for intervention as of right had not been met); *see also City of Chi. v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986 (7th Cir. 2011).

## ARGUMENT

### A.  DPI satisfies Rule 24(a)'s requirements for intervention as a matter of right.

DPI satisfies each of the four requirements of Rule 24(a)(2). The Court should therefore grant its motion to intervene as of right.

### 1. The motion is timely.

The motion to intervene is timely. "The test for timeliness is essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich*, 64 F.3d at 321 (quotation marks omitted). To determine timeliness, courts consider "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa Cmty.*, 214 F.3d at 949.

Plaintiffs filed their Complaint on May 25, 2022. This motion follows only three weeks later, and before any substantive activity in the case. The State Defendants' response to the Complaint is not due until July 8, and nothing of substance has occurred in the case. The Court has scheduled an initial status conference for August 9—still nearly two months away. Simply put, there has been no delay, and there is no possible risk of prejudice to the other parties. *See id*. DPI acted promptly after it learned of this lawsuit and did not "drag[] its heels." *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994). DPI accordingly easily satisfies the first requirement for intervention.

### 2. The disposition of this case will impair DPI's and its members' and constituents' abilities to protect their interests.

DPI and its members have significant protectable interests in this lawsuit that might be impaired by Plaintiffs' causes of action. A "prospective intervenor's interest [in the lawsuit] must be direct, significant, and legally protectable." *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 391 (7th Cir. 2019). In assessing whether such an interest is sufficiently "impair[ed] or impede[d]," Fed. R. Civ. P. 24(a)(2), courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting *Nuesse*

6

*v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *3 (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment). The Seventh Circuit has "interpreted statements of the Supreme Court as encouraging liberality in the definition of an interest." *Lopez-Aguilar*, 924 F.3d at 392.

DPI easily satisfies this factor. If successful, Plaintiffs' challenge to established Illinois voting procedures would impair DPI's legally protected interests. DPI is a political organization dedicated to expanding the franchise and supporting the election of Democratic Party candidates. Injunction of the Ballot Receipt Deadline and the resulting rejection of timely-cast ballots of lawful voters would cause DPI serious and irreparable harm. These include direct injuries to DPI itself: the significant change in the law would force DPI to expend significant resources to educate the public to attempt to remediate the harm it would otherwise cause—resources that would have otherwise gone to persuading and turning out voters.

The Seventh Circuit has found precisely this type of injury sufficient to confer Article III standing on the Democratic Party in a voting rights lawsuit. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding "new law injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181 (2008). Other courts around the country have come to similar conclusions. *See, e.g.*, *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

Courts regularly grant intervention to political parties in cases like this one, which involve the rules under which elections are to be held. *See, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) (holding that local and national political party committees should have been allowed to intervene as of right as defendants in challenge to state election laws); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020) (holding a political party has a "significant protectable interest" in intervening to defend its voters' interests in vote-by-mail and its own resources spent in support of vote-by-mail); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) (granting party committees intervention as of right as defendants in a challenge to mail-in voting procedures); *see also Cooper Techs. v. Dudas*, 247 F.R.D. 510, 514 (E.D. Va. 2007) ("[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1908 (2d ed. 1986))).

Separate and apart from the injury that Plaintiffs' action threatens to cause DPI directly, DPI also has a significant protectable interest in this lawsuit because of the harm that it threatens DPI's members and constituents. Plaintiffs seek an injunction preventing Illinois from counting *any* mail-in ballots after "election day," regardless of when they are postmarked or dated. *See* Compl. ¶ 57 ("A qualified ballot for federal office is not a legal vote unless it is received by Election Day.") Such an injunction would subject the counting of mail-in ballots—including those of Democratic voters—to circumstances entirely outside the voter's control. It would condition the counting of votes upon the delivery timelines of the U.S. Postal Service, leading to the

8

disenfranchisement of many voters through no fault of their own.[4] Federal courts have repeatedly held that, where an action carries with it the prospect of disenfranchising a political party's members, the party has a cognizable interest at stake and may intervene to protect that interest. *See, e.g.*, *Crawford*, 472 F.3d at 951 ("The Democratic Party also has standing to assert the rights of those of its members who will be prevented from voting by the new law."); *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 573-74 (6th Cir. 2004) (holding the risk that some voters will be disenfranchised confers standing upon political parties and labor organizations).

Thus, DPI satisfies the second and third factors for intervention as of right, as well.

### 3. DPI's interests are not adequately represented in this case.

Finally, DPI satisfies the fourth factor for intervention as of right, because it cannot rely on the parties in the case to adequately represent its interests. This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1261 (7th Cir. 1983) (citation omitted). "[T]he proposed intervenor should be treated as the best judge of whether the existing parties adequately represent his or her interests, and . . . any doubt regarding adequacy should be resolved in favor of the proposed intervenors." *U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *6 (noting that the applicant need only show

---

[4] *See* Brian Naylor, *The Postal Service is slowing the mail to save money. Critics say it's a death spiral*, NPR.org (Oct. 8, 2021), https://www.npr.org/2021/10/08/1044016873/postal-service-slow-mail-save-money; Geoff Bennett & Ryan Connelly Holmes, *Why the U.S. Postal Service is experiencing delays*, PBS News Hour (Jan. 26, 2022), https://www.pbs.org/newshour/show/why-the-u-s-postal-service-is-experiencing-delays; Sneha Day, *Postal delivery delays slammed at congressional field hearing in Chicago*, Chi. Sun-Times (Oct. 15, 2021), https://chicago.suntimes.com/politics/2021/10/15/22728928/postal-delivery-delays-mail-chicago; Sally Schulze, *Mail delays continue across Chicago area, Rep. Casten pushing for change*, FOX 32 Chicago (Jan. 31, 2022), https://www.fox32chicago.com/news/mail-delays-continue-across-chicago-area-rep-casten-pushing-for-change.

9

that representation of its interest may be inadequate, not that representation will in fact be inadequate) (quotation marks omitted).

While Defendants have an interest in defending the actions of state and local governments, DPI has a different interest: ensuring that every Democratic voter in Illinois has a meaningful opportunity to cast a ballot and have that ballot counted in the upcoming elections. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))); *U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *7 ("[T]he government only represents the citizen to the extent his interests coincide with the public interest. If the citizen stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him." (quoting *Chiglo v. City of Preston*, 104 F.3d 185, 187–88 (8th Cir. 1997))).

That is the case here. DPI has specific interests and concerns—from its overall electoral prospects to the most efficient use of its limited resources to promote get-out-the-vote-efforts—that neither Defendants nor any other party in this lawsuit share. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard Nevada[ns'] right to vote that are distinct from [state defendants'] arguments"). Recognizing this, courts have consistently permitted political parties to intervene in cases involving election administration even where government officials are named as defendants. *See, e.g.*, *Issa*, 2020 WL 3074351, at *4. Here, as in *Issa*:

10

> Although Defendants and the Proposed Intervenor[] fall on the same side of the dispute, Defendants' interests in the implementation of the [challenged law] differ from those of the Proposed Intervenor[]. While Defendants' arguments turn on their inherent authority as [government officials] and their responsibility to properly administer election laws, the Proposed Intervenor[ is] concerned with ensuring [its] party members and the voters [it] represents have the opportunity to vote in the upcoming federal election, advancing [its] overall electoral prospects, and allocating [its] limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Id.* at *3 (citation omitted); *see also U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *7 (granting intervention as of right where "[a]lthough Defendants are not directly adverse to the [proposed intervenors], their interests are not completely identical"). While Defendants might defend the Ballot Receipt Deadline as not in conflict with federal law, they cannot be expected to join DPI in promoting its more parochial interests. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (granting motion to intervene as of right where private parties' interests diverged from government's interest in representation, and where "[t]he early presence of intervenors may serve to prevent errors from creeping into the proceedings, clarify some issues, and perhaps contribute to an amicable settlement"); *Ohio River Valley Env't. Coal., Inc. v. Salazar*, No. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W. Va. June 18, 2009) (granting motion to intervene as of right where defendant and proposed intervenor had identical goals but "difference in degree of interest could motivate the [intervenor] to mount a more vigorous defense" and "[t]he possibility that this difference in vigor could unearth a meritorious argument overlooked by the current Defendant justifies the potential burden on having an additional party in litigation").

In short, because its interests are not shared by the current parties to the litigation, DPI cannot rely on Defendants or anyone else to provide adequate representation. It has thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See Issa*, 2020 WL 3074351, at *3–4; *Paher*, 2020 WL 2042365, at *3.

11

**B. Alternatively, DPI should be granted permissive intervention under Rule 24(b).**

Even if this Court were to find DPI ineligible for intervention as of right, it easily satisfies the requirements for permissive intervention under Rule 24(b). "Rule 24(b)(2) states that permissive intervention may be allowed 'when an applicant's claim or defense and the main action have a question of law or fact in common' . . . . 'In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (quoting Fed. R. Civ. P. 24(b)). Federal Courts across the country have granted permissive intervention to political parties in cases challenging voting laws. *See e.g.*, *Democratic Party of Va. v. Brink*, No. 3:21-cv-756-HEH, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022) ("[Intervenor] is one of Virginia's two major political parties, and it brings a unique perspective on the election laws being challenged and how those laws affect its candidates and voters. Courts often allow the permissive intervention of political parties in actions challenging voting laws for exactly this reason.") (citation omitted); *see also Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2021 WL 5217875, at *2 (D. Ariz. Oct. 4, 2021); *Swenson v. Bostelman*, No. 20-cv-459-wmc, 2020 WL 8872099 (W.D. Wis. June 23, 2020).

As discussed above, Plaintiffs' challenge to Illinois law threatens DPI with injury sufficient to confer Article III standing and DPI's motion to intervene is timely. DPI has defenses to Plaintiffs' claims that share common questions of law and fact—for example, DPI maintains that Plaintiffs have failed to state a claim on which relief can be granted and lack standing to bring this suit. *See* Ex. 1. Most importantly, intervention will result in neither prejudice nor undue delay. DPI has an interest in a swift resolution of this action to ensure that every eligible Illinoisan is allowed to cast a ballot and have that ballot counted in the coming election. Recognizing this urgency, DPI

has already prepared and attached to this motion a Motion to Dismiss. *See* Ex. 1. DPI's Proposed Motion to Dismiss merely challenges the sufficiency of Plaintiffs' claims. It does not add any unrelated counterclaims or distract the Court from the main issues of the case. Given the fatal legal and factual shortcomings of Plaintiffs' claims, DPI's intervention in this case will help facilitate—and not hinder—the expeditious resolution of this litigation.

## CONCLUSION

For the reasons stated above, Proposed Intervenor the Democratic Party of Illinois respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit it to intervene under Rule 24(b).

June 17, 2022                                                                 Respectfully Submitted,

**JENNER & BLOCK LLP**

By:  s/ Coral A. Negron

Coral A. Negron
Jenner & Block LLP
1099 New York Avenue, NW
Washington, D.C. 20001
Telephone: (202) 639-6875
cnegron@jenner.com

Elisabeth C. Frost*
Maya Sequeira*
Richard A. Medina*
Elias Law Group LLP
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
efrost@elias.law
msequeira@elias.law
rmedina@elias.law

13

Abha Khanna*
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
Facsimile: (206) 656-0180
akhanna@elias.law

*Attorneys for Proposed Intervenor-Defendant
Democratic Party of Illinois*

*Pro hac vice application forthcoming*

## CERTIFICATE OF SERVICE

I, Coral A. Negron, certify that on June 17, 2022 I electronically filed the foregoing **MOTION TO INTERVENE AS DEFENDANT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

    /s/ Coral A. Negron
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
Telephone: (202) 639-6875