**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. BOST, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22-CV-2754 |
| v. | ) | |
| | ) | Judge John F. Kness |
| ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS and BERNADETTE | ) | |
| MATTHEWS, in her capacity as the | ) | |
| Executive Director of the Illinois State | ) | |
| Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT**
**TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD................................................................................................................ 4

ARGUMENT ............................................................................................................................. 5

    I.    Plaintiffs lack standing to assert their claims. .................................................................. 5

    II.   The Eleventh Amendment bars Plaintiffs' claims against ISBE.................................... 11

    III.  Plaintiffs do not allege plausible claims under 2 U.S.C. § 7 or 3 U.S.C. § 1.............................. 11

    III.  Plaintiffs do not allege any plausible violation of their First Amendment right to vote or right to stand for office. ....................................................................................................... 14

        A.   The Illinois Ballot Receipt Deadline enhances, rather than burdens, the right    to vote. ........... 15

        B.   Plaintiffs cannot state a claim for disenfranchisement through vote dilution. ........................... 18

CONCLUSION....................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 789 (1983) ............................................................... 15, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................4

*Bastien v. AT&T Wireless Serv., Inc.*, 205 F.3d 983 (7th Cir. 2000) ....................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ..........................................................4

*Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270 (7th Cir. 1986) ..................................18

*Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) .................................................................3

*Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020) ...................................3

*Burdick v. Takushi*, 504 U.S. 428 (1992) ........................................................................ 15, 17

*Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586 (7th Cir. 2014) .......4

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..........................................................10

*Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998) .....................................................................4

*Craig v. Ontario Corp.*, 543 F.3d 872 (7th Cir. 2008) ..........................................................4

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) ..............................................15

*Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993 (D. Nev. 2020) ............3

*Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354 (D.N.J. 2020) ............. 3, 13

*Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) ............12

*Fairchild v. Hughes*, 258 U.S. 126 (1922) ........................................................................ 6, 7

*Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020) ................... 8, 9, 10

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004) ............................................................ 15, 17

*Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) ............11

*King v. Whitmer*, Case No. 20-13134 at Dkt. No. 62, 2020 U.S. Dist. LEXIS 228621, at *26 (E.D. Mich.
   Dec. 7, 2020) .........................................................................................................................11

*Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ......................11

*Lance v. Coffman*, 549 U.S. 437, 442 (2007) ..................................................................... 8, 9

*Libertarian Party of Illinois v. Rednour*, 108 F.3d 768 (7th Cir. 1997) ........................ 15, 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 6, 7, 8

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................................... 6, 7

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ................................................4

*Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029 (8th Cir. 2013) .......................................18

*Pa. Democratic Party v. Boockvar*, 238 A.3d 245 (Pa. 2020) ..............................................3

*Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2748301 (D. Nev. May 27, 2020) ...............19

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984) .......................11

*Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121 (8th Cir. 1973) ....18

*Raines v. Byrd*, 521 U.S. 811 (1997) .....................................................................................5

*Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396 (E.D. Pa. 2016) ...........................19

*Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732 (2021) ........................................3

*Reynolds v. Sims*, 377 U.S. 533 (1964) ...............................................................................18

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816 (7th Cir. 2009) ..............................4

*Shelby County, Ala. v. Holder*, 133 S. Ct. 2612 (2013) ......................................................15

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) ....................................................................18

*Smiley v. Holm*, 285 U.S. 355, 366–67 (1932) ...................................................................13

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................................... 5, 6

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) ........................................6

*Stoner v. Wis. Dep't of Agric.*, 50 F.3d 481, 482–83 (7th Cir. 1995) ..................................11

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ........................................................ 15, 18

*United States v. Richardson*, 418 U.S. 166 (1974) ........................................................................ 8

*Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000) .................................. 12, 13

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) ............................................. 11

*Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955) ............................................. 16

## Statutes

10 ILCS § 15/19-8(c) ................................................................................................................. 5, 6, 11

10 ILCS 5/18A-15(a) .................................................................................................................. 11

10 ILCS 5/29-10 ......................................................................................................................... 6

18A-15(a) ..................................................................................................................................... 11

2 U.S.C. § 7 ................................................................................................................................. 5, 15

3 U.S.C. § 1 ................................................................................................................................. 5, 15

FRCP 12(b)(1) ............................................................................................................................. 8

FRCP 12(b)(6) ............................................................................................................................. 8

## Other Authorities

Daniel M. Thompson, *et al.*, "Universal vote-by-mail has no impact on partisan turnout or vote share," *The Proceedings of the National Academy of Sciences*, Vol. 117 No. 25 (June 9, 2020) ...................... 14

Marie C. Dillon, *Lessons Learned from the November 2020 Election*, Better Gov't Association (Dec. 28, 2020) ........................................................................................................................................ 6

Tbl. 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots, Nat'l Conference of State Legislatures (Mar. 15, 2022) ...................................................................................................... 6

## <u>INTRODUCTION</u>

Through this lawsuit, Plaintiffs seek to disenfranchise Illinois voters who avail themselves of the ability to lawfully vote by mail, under the guise of attempting to vindicate Plaintiffs' First Amendment rights. Plaintiffs assert three causes of action: Count 1 alleges that the ballot receipt deadline in 10 ILCS § 15/19-8(c) (the "Ballot Receipt Deadline") causes Plaintiffs' votes to be diluted in violation of the First and Fourteenth Amendments to the United States Constitution; Count II alleges that, by counting ballots received after Election Day, Defendants violate Plaintiffs' rights as candidates under the First and Fourteenth Amendments to the United States Constitution; and Count III asserts that the Ballot Receipt Deadline violates the federal Election Day statutes, 2 U.S.C. § 7 and 3 U.S.C. § 1. ECF #1, ¶¶ 38–60.

Plaintiffs ask this Court to permanently enjoin Defendants from enforcing the Ballot Receipt Deadline, and instead require that in all future elections, all vote-by-mail ballots received after Election Day be rejected, regardless of whether the ballots were voted, dated, and timely mailed. *Id.* at 11.

Plaintiffs' Complaint is fatally flawed and should be dismissed for several reasons. First, Plaintiffs lack standing to assert any of the claims in the Complaint. Second, Plaintiffs' claims are without merit because they have not alleged any plausible facts indicating that their ability to cast a vote or to run for political office is impeded by the Ballot Receipt Deadline, or any plausible facts supporting their contention that the Ballot Receipt Deadline violates the federal election statutes. And finally, Plaintiffs' claims against a state agency—the ISBE—are barred by the Eleventh Amendment. Because Plaintiffs cannot cure these defects, their Complaint must be dismissed with prejudice.

1

## BACKGROUND

Section 19-8(c) of the Illinois Election Code (the "Ballot Receipt Deadline statute") ensures that ballots cast by lawful voters and received in the mail by election officials in the 14 days after Election Day are counted, provided that: (1) the ballots are postmarked on or before Election Day, or (2) if the U.S. Postal Service fails to postmark them, the ballot certification completed by the voter is dated on or before Election Day.[1] This law is not new; rather, it has been in force in Illinois since 2015. And Illinois' acceptance of mail ballots received after Election Day dates back another decade.

This law is crucial to ensuring the voting rights of millions of Illinoisans who avail themselves of the right to vote by mail. Without it, those voters risk disenfranchisement, despite timely casting their ballots, due to delayed mail delivery and/or inconsistent postmarking practices.[2] Moreover, Illinois is far from being the only state to require the counting of vote-by-mail ballots delivered after Election Day—17 other states, including Kansas, Mississippi, North Carolina, Texas, and Virginia, have extended ballot receipt deadlines, as do the District of Columbia, Puerto Rico, and the Virgin Islands.[3]

Notwithstanding those facts, Plaintiffs, who are Illinois voters and candidates for federal office, bring this lawsuit against the ISBE and the Executive Director of the ISBE, alleging that Illinois' Ballot Receipt Deadline violates the U.S. Constitution and conflicts with Congress's

---

[1] The vote-by-mail process in Illinois requires a voter to seal their ballot in an envelope with a certification that the voter must date and sign under penalty of perjury. *See* 10 ILCS 5/29-10.

[2] In the last federal election, one of every three votes in Illinois was cast via mail ballot. *See, e.g.,* Marie C. Dillon, *Lessons Learned from the November 2020 Election*, Better Gov't Association (Dec. 28, 2020); *available at* https://www.bettergov.org/news/lessons-from-the-november-2020-election/.

[3] Tbl. 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots, Nat'l Conference of State Legislatures (Mar. 15, 2022), *available at* https://www.ncsl.org/research/elections-and-campaigns/vopp-table-11-receipt-and-postmark-deadlines-for-absentee-ballots.aspx.

command that Election Day take place on the "first Tuesday after the first Monday in November." ECF #1, ¶ 3.

Significantly, this is not the first time such claims have been asserted. In 2020, several courts around the country considered and rejected nearly identical challenges to post-election day ballot receipt deadlines. *See, e.g., Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353–54 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) (finding federal law does not provide for when or how ballot counting occurs . . . and that the federal election day statutes "can, and indeed do, operate harmoniously" with state laws setting post-election day absentee ballot receipt deadlines); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 359 (D.N.J. 2020) ("Although federal law prohibits New Jersey from canvassing ballots cast after Election Day, it is within New Jersey's discretion to choose its methods of determining the timeliness of ballots, so long as there is no appreciable risk of canvassing untimely ballots"); *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1004 (D. Nev. 2020) (dismissing complaint challenging post-election day canvassing of vote-by-mail ballots for lack of standing finding, among other things, alleged vote dilution was impermissibly speculative); *see also Pa. Democratic Party v. Boockvar*, 238 A.3d 245, 372 (Pa. 2020), *cert. denied sub nom. Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732 (2021) (allowing a three-day extension of the mail ballot receipt deadline to account for U.S. Postal Service delivery timelines and to avoid disenfranchisement, and noting that "Pennsylvania's election laws currently accommodate the receipt of certain ballots after Election Day, as it allows the tabulation of military and overseas ballots received up to seven days after Election Day").

Plaintiffs' claims in this lawsuit are similarly unavailing, and this lawsuit should be similarly dismissed.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires courts to dismiss any claim over which the federal court lacks subject matter jurisdiction. If a defendant challenges jurisdiction, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014); *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008). A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power over a claim, and a federal court must assure itself that it possesses subject matter jurisdiction over a case before it proceeds on the merits. *See Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998). In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court need not accept the truth of the allegations in the complaint and may look beyond the complaint and pleadings to evidence that calls the court's jurisdiction into doubt. *See Bastien v. AT&T Wireless Serv., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). Here, because Plaintiffs lack standing to bring their claims, this Court lacks subject matter jurisdiction over Plaintiffs' claims and the Complaint must be dismissed in its entirety.

A motion to dismiss under Rule 12(b)(6) challenges the complaint's sufficiency. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 820–21 (7th Cir. 2009). To survive a motion to dismiss, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). While the court must accept all well-pleaded factual allegations, *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), legal conclusions and "conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Iqbal*, 556 U.S. at 663. A complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." at 678. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Id.* Here, Plaintiffs' claims are barred by the

4

Eleventh Amendment and because they otherwise fail to allege a plausible violation of the Federal Election Statutes and the First Amendment.

## ARGUMENT

**I.     Plaintiffs lack standing to assert their claims.**

Plaintiffs lack standing because they do not and cannot plausibly plead that they have suffered any particularized or concrete injury as a result of the Ballot Receipt Deadline statute; rather, they simply express disagreement with statutes passed by the Illinois legislature and ask this Court to override the state legislature's decisions. Courts have repeatedly held that such allegations are insufficient to confer standing.

The Constitution confers limited authority on each branch of the Federal Government. It vests Congress with enumerated legislative powers, it confers upon the President the executive power, and it endows the federal courts with the judicial power of the United States. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "In order to remain faithful to this tripartite structure, the power of the Federal Judiciary may not be permitted to intrude upon the powers given to the other branches." *Id.* The Constitution does not fully explain what is meant by the judicial power of the United States; however, "it does specify that this power extends only to cases or controversies." *Id.* No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

Standing to sue is rooted in the traditional understanding of a case or controversy, and the "irreducible constitutional minimum" of standing consists of three elements. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at

338 (citing *Raines*, 521 U.S. at 802; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court," and in this way "serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo*, 578 U.S. at 338 (citations omitted).

Injury in fact is the "first and foremost of standing's three elements." *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must show that he or she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citations omitted). For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Id*. While particularization is necessary to establish injury, it alone is not sufficient. To establish standing, an injury must also be concrete—that is, it must actually exist, rather than simply being an abstract concept. *Id.* at 339–40.

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74; *see also Fairchild v. Hughes*, 258 U.S. 126, 129–30 (1922) ("Plaintiff has asserted only the right, possessed by every citizen, to require that the Government be administered according to law. . . . Obviously this general right does not entitle a private citizen to institute in the federal courts a suit."); *Massachusetts v. Mellon*, 262 U.S. 447 (1923) ("The party who invokes the power of judicial review must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of

6

its enforcement, and not merely that he suffers in some indefinite way in common with people generally.").

Here, Plaintiffs assert that by following sections 18A-15(a) and 19-8(c) enforcing the Ballot Receipt Deadline statute, Defendants violate Plaintiffs' First Amendment rights to vote and to stand for office. ECF #1, ¶¶ 38–48. That statute provides, in relevant part, that:

> [E]ach vote by mail voter's ballot that is mailed to an election authority and postmarked no later than election day, but that is received by the election authority after the polls close on election day and before the close of the period for counting provisional ballots cast at that election, shall be endorsed by the receiving authority with the day and hour of receipt and shall be counted at the central ballot counting location of the election authority during the period for counting provisional ballots.

10 ILCS 5/19-8(c). The statute further provides that the county clerk or board of election commissioners shall "complete validation and counting of provisional ballots within 14 calendar days of the day of the election." 10 ILCS 5/18A-15(a).

Plaintiffs argue that the requirement that election authorities count ballots mailed on or before Election Day, but not received until up to 14 days after Election Day, harms them by "substantially increasing the pool of votes cast and dilut[ing] the weight of Plaintiffs' votes." ECF #1 at ¶ 34. Plaintiffs further assert that this section of the Illinois Election Code subjects them to additional harms as well, but do not specify what those harms are. ECF #1 at ¶ 36.

Such broad allegations of harm are exactly the type considered by the Supreme Court in *Lujan*,[4] *Fairchild*,[5] and *Massachusetts*,[6] and found to be insufficient to provide standing. Plaintiffs do nothing more than raise a "generally available grievance about government," and seek relief that "no more directly and tangibly benefits [them] than it does the public at large." *Lujan*, 504

---

[4] 504 U.S. at 573–74.
[5] 258 U.S. at 129–30.
[6] 262 U.S. 447 (1923).

U.S. at 573–74. Plaintiffs have done nothing more than raise the issue of whether the counting of lawful mail-in ballots that were mailed, but not received, on or before Election Day, affect the validity of the election as a whole.

Indeed, the Supreme Court has already held that the sort of injury alleged here— specifically, the assertion that the Elections Clause or related federal statutes have not been followed, and that their right to vote and/or to stand for office has somehow been impaired as a result—is not sufficient to confer standing on a plaintiff. Rather, "[t]his injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Lance v. Coffman*, 549 U.S. 437, 442 (2007); *see also United States v. Richardson*, 418 U.S. 166 (1974) (dismissing federal taxpayer claim as a "generalized grievance that is plainly differentiated and common to all members of the public").

Plaintiffs articulate no injury, either particularized or concrete, that they have allegedly suffered as a result of the Ballot Receipt Deadline statute; rather, they simply express disagreement with statutes passed by the Illinois legislature and ask this Court to override the state legislature's decisions. Plaintiffs' lawsuit is nothing more than "an alleged violation of a right to have the Government act in accordance with law"—a claim that is not judicially cognizable because "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Lujan*, 504 U.S. at 575–76.

Courts that have considered similar claims in other states have similarly concluded that the plaintiffs in those cases lacked standing. For example, in *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020), Plaintiff Feehan identified himself as a resident of the State of Wisconsin, a registered voter, and "a nominee of the Republican Party to be a Presidential Elector

on behalf of the State of Wisconsin."[7] *Id.* at 601. Feehan's lawsuit stemmed from the November 2020 election and alleged four counts: (1) violation of the Elections and Electors Clauses; (2) violation of the Equal Protection Clause of the Fourteenth Amendment and the "invalid enactment of regulations and disparate treatment of absentee vs. mail-in ballots;" (3) denial of the Fourteenth Amendment due process right to vote; and (4) "wide-spread ballot fraud." *Id*. Feehan sought various categories of declaratory and injunctive relief. *Id*.

The *Feehan* court dismissed the case, holding that the plaintiff had no standing to assert his claims, whether as a voter or as a candidate for the office of Elector. *See generally Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020). With regard to Feehan's claims in his capacity as a voter, the court held that, "although it would over-simplify the standing analysis to conclude that no state-wide election law is subject to challenge simply because it affects all voters, the notion that a *single person's* vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing." *Id*. at 608 (emphasis in original). The *Feehan* court also found that the plaintiff lacked standing to assert his claims as a nominee for Elector, noting that Electors' interest in "seeing that every valid vote is correctly counted and that no vote is diluted is no different than that of an ordinary voter," thus relegating those claims to the same category of "undifferentiated, generalized grievance[s] about the conduct of government that the Supreme Court has long considered inadequate for standing." *Feehan*, 506 F. Supp. 3d at 611 (citing *Lance v. Coffman*, 549 U.S. 437, 442 (2007)).

---

[7] The original complaint identified a second plaintiff (Derrick Van Orden), who identified himself as "the 2020 Republican Nominee for Wisconsin's Third Congressional Seat for the U.S. House of Representatives." *Feehan*, 506 F. Supp. 3d at 601. In a subsequently filed Amended Complaint, Van Orden was removed as a plaintiff; the remainder of the Amended Complaint was the same as the original Complaint. *Feehan*, 506 F. Supp. 3d at 603.

Here, Plaintiffs do not specify precisely *how* the Illinois Ballot Receipt Deadline harms them or their ability to vote; one assumes that Plaintiffs' concern lies in the possibility of their chosen candidate (or, in Plaintiff Bost's case, himself) not being elected. First, any such claims are wholly speculative. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (holding that standing was not conferred by an alleged "speculative chain of possibilities" that "failed to show any threat of imminent harm or any concrete injury traceable to the statute" at issue). To state such a claim, Plaintiffs would have to plausibly allege that a sufficient number of the vote-by-mail ballots received within the 14 days following Election Day would be for their candidate's opponent, and that their candidate would be defeated if those vote-by-mail ballots were counted— that is, that the vote-by-mail ballots received after Election Day would swing the election in favor of their candidate's opponent. Plaintiffs allege no facts in support of such an assertion.[8] Moreover, while having one's vote counted as part of a valid election process is certainly a right afforded under the United States Constitution, the right to have one's candidate of choice declared the victor is not. *See, e.g., Feehan*, 506 F. Supp. 3d at 609.

The concept of standing also dictates that "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Id.* at 610. For the reasons explained above, Plaintiffs also lack standing because their requested remedy—the rejection of all vote-by-mail ballots received after Election Day, regardless of whether the ballots were voted, dated, and timely mailed—is not relief tailored to the alleged injury. As courts within the Seventh Circuit have previously held, plaintiffs' alleged injury "does not entitle them to seek their requested remedy because the harm of having one's vote invalidated or diluted is not remedied by denying millions of others *their* right to vote."

---

[8] Indeed, empirical research suggests that increased use of vote-by-mail ballots has no effect on the outcome of elections. *See* Daniel M. Thompson, *et al.*, "Universal vote-by-mail has no impact on partisan turnout or vote share," *The Proceedings of the National Academy of Sciences*, Vol. 117 No. 25 (June 9, 2020), available at https://www.pnas.org/doi/full/10.1073/pnas.2007249117 (last visited July 12, 2022).

*Id.* (emphasis in original) (citing *King v. Whitmer*, Case No. 20-13134 at Dkt. No. 62, 2020 U.S. Dist. LEXIS 228621, at *26 (E.D. Mich. Dec. 7, 2020)).

Because Plaintiffs have neither articulated a concrete or particularized injury in fact, nor stated claims that are redressable by this Court, they do not have standing to bring this lawsuit. For this reason, their Complaint should be dismissed with prejudice.

## II.      The Eleventh Amendment bars Plaintiffs' claims against ISBE.

Apart from Plaintiffs lack of standing to pursue this case, Plaintiffs' claims against ISBE also must be dismissed because they are barred by the Eleventh Amendment. Plaintiffs assert claims against ISBE, a state agency. But it is well-established that the Eleventh Amendment provides immunity to states and state agencies (as "arms of the state"). *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) (citing *Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) and *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989)). The Eleventh Amendment applies with full force against both federal and state law claims. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984); *see also Stoner v. Wis. Dep't of Agric.*, 50 F.3d 481, 482–83 (7th Cir. 1995) (holding that state's decision to indemnify employees does not abrogate Eleventh Amendment immunity). Recognizing this broad immunity, the Supreme Court has determined that neither a State nor its agencies are "persons" subject to suit under § 1983. *Will*, 491 U.S. at 71; *see also Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904, 910 n.7 (7th Cir. 1991) (noting, as an alternative basis for dismissal, that

Consistent with this law, Plaintiffs' claims against ISBE are barred by the Eleventh Amendment and should be dismissed.

## III.      Plaintiffs do not allege plausible claims under 2 U.S.C. § 7 or 3 U.S.C. § 1.

Plaintiffs include a claim for violation of 2 U.S.C. § 7 and 3 U.S.C. § 1 (the "Federal Election Statutes"). Even without the standing problem discussed *supra*, this claim is unavailing

and should be dismissed. As Plaintiffs acknowledge in their Complaint, 2 U.S.C. § 7 merely serves to set the date for the election of Representatives and Delegates to Congress as "[t]he Tuesday next after the 1st Monday in November, in every even numbered year," while 3 U.S.C. § 1 provides only that "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday after the first Monday in November, in every fourth year succeeding every election of President and Vice President." ECF #1, ¶¶ 50–51.

Courts in other circuits have recognized that "a state's discretion and flexibility in establishing the time, place, and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject." *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000). Moreover, courts have previously noted that there is a dearth of law, whether statutory or judicially created, regulating the states' methods of determining the timeliness of mail-in ballots, or even requiring that mail-in ballots be postmarked. *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020).

In *Bomer*, the Fifth Circuit considered a case regarding absentee voting regulations in Texas. In upholding the law, the Court noted that it could not conceive "that Congress intended the federal election day statutes to have the effect of impeding citizens in exercising their right to vote," and further stated that "[t]he legislative history of the statutes reflects Congress' concern that citizens be able to exercise their right to vote." *Bomer*, 199 F.3d at 777. The court went on to explain that "[t]he challenged Texas statutes encourage voting by providing Texas voters with more opportunities to vote"—in short, the Texas statutes in question "further the important federal objective of reducing the burden on citizens to exercise their right to vote by allowing them to vote at a time convenient to them, without thwarting other federal concerns." *Id.*

12

The plaintiffs in *Way* argued that New Jersey could not permit ballots cast after Election Day to be counted. *Way*, 492 F. Supp. 3d at 369. Specifically, Plaintiffs argued that "a mail-in ballot is not a legal vote unless it is marked and cast on or before Election Day," and that "the Federal Election Day Statutes preempt any state law that permits counting ballots cast after Election Day." *Id.* The defendants in that case agreed that New Jersey could not permit the counting of untimely ballots, but disputed that the New Jersey statute in question permitted such untimely counting. *Id.* at 370. Rather, defendants argued, the New Jersey statute merely addressed an evidentiary issue—how the state was to determine whether a ballot was cast by Election Day. *Id.*

In arriving at its conclusion that the New Jersey statute did not conflict with the Federal Election Statutes, the *Way* court quoted *Bomer* for the proposition that "a state's discretion and flexibility in establishing the time, place, and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject." *Way*, 492 F. Supp. 3d at 270. The *Way* court went on to explain that "the Elections Clause grants the states comprehensive authority to provide a complete code for the congressional elections, not only as to times and places, but in relation to prevention of fraud and corrupt practices, counting of votes, and duties of inspectors and canvassers, unless Congress should supplement these state regulations or substitute its own." *Way*, 492 F. Supp. 3d at 372 (cleaned up) (citing *Smiley v. Holm*, 285 U.S. 355, 366–67 (1932)). Because the Federal Election Statutes "are silent on methods of determining the timeliness of ballots," the precedent discussed above indicates that such determinations are properly left to the states, and thus the Illinois Ballot Receipt Deadline at issue here does not conflict with the Federal Election Statutes. *Way*, 492 F. Supp. 3d at 372.

13

The Illinois Ballot Receipt Deadline statute furthers the same interests as the Texas statute at issue in *Bomer* and the New Jersey statute at issue in *Way*—*i.e.*, they ensure that all Illinois voters have an equal opportunity to exercise their First Amendment right to vote. Plaintiffs have not alleged how a statute intended to ensure that all voters, including those who cannot go to the polls in person on Election Day, have their votes counted conflicts with the Federal Election Statutes, and thus fail to state a claim under either 2 U.S.C. § 7 or 3 U.S.C. § 1.

### III. Plaintiffs do not allege any plausible violation of their First Amendment right to vote or right to stand for office.

Plaintiffs also fail to allege any plausible claims under the First Amendment. Plaintiffs frame their allegations, in part, as an effort to vindicate their First Amendment right to vote and First Amendment right to stand for office. ECF #1, ¶¶ 38–48. But Plaintiffs do not plausibly explain how their right to vote or right to stand for office in any given election is impinged by the section of the Illinois Election Code which permits mail-in ballots postmarked no later than Election Day to be counted up to 14 days after Election Day. There is nothing in the Ballot Receipt Deadline statute that prevents Plaintiffs from exercising their constitutional right to vote or their right to stand for office.

Plaintiffs claim that the provisions of the Ballot Receipt Deadline statute "dilute" their "timely cast and received ballots," and "forc[e] Plaintiffs to spend money, devote time, and otherwise injuriously rely on unlawful provisions of state law in organizing, funding, and running their campaigns." ECF #1, ¶¶ 42, 46. But Plaintiffs nowhere explain how a statute that ensures that voters who are unable to vote in person on Election Day—which might be due to disability, age, or military service requiring them to be overseas on Election Day – are able to exercise *their* constitutional right to vote, somehow interferes with *Plaintiffs'* right to vote. Similarly, with regard to their claim of violation of the right to stand for office, Plaintiffs offer nothing more than blanket

assertions in support of their allegations, which do nothing to indicate how the Ballot Receipt Deadline hinders Plaintiffs' ability to run for office by statute.

### A. The Illinois Ballot Receipt Deadline enhances, rather than burdens, the right to vote.

The Constitution "confers on the states broad authority to regulate the conduct of elections, including federal ones." *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004); *see also Shelby County, Ala. v. Holder*, 133 S. Ct. 2612, 2623 (2013) ("States have broad powers to determine the conditions under which the right of suffrage may be exercised.") (citation and internal quotation marks omitted)). Accordingly, regulations of the electoral process are subject to a "flexible standard," *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 773 (7th Cir. 1997), that has come to be known as the *Anderson-Burdick* standard, after the two Supreme Court cases in which it was developed. *See Burdick v. Takushi*, 504 U.S. 428 (1992), and *Anderson v. Celebrezze*, 460 U.S. 789 (1983); *see also Crawford v. Marion Cty. Election Bd*., 553 U.S. 181, 190, 202–03 (2008) (opinion of Stevens, J.) (applying *Anderson-Burdick* standard to regulation of voting procedures); *id*. at 204–05 (Scalia, J., concurring in the judgment) (same).

Under this standard, the reviewing court must weigh the "'character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments…' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Burdick*, 504 U.S. at 434, *quoting Anderson*, 460 U.S. at 789. If an electoral regulation imposes a "severe" restriction on First or Fourteenth Amendment rights, strict scrutiny applies. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). If, on the other hand, the State has imposed "reasonable, nondiscriminatory restrictions on these rights… the [S]tate's important regulatory interests will generally be sufficient to justify the regulations." *Libertarian Party*, 108 F.3d at 773, *citing Burdick*, 504 U.S. at 434; *see also Timmons*, 520 U.S. at 358.

15

Here, the Illinois Ballot Receipt Deadline does not deny, impinge, or inhibit anyone's right to vote or to run for office. On the contrary, the Ballot Deadline Receipt Deadline ensures that timely cast mail-in ballots are not rejected merely because of delays attributable to the Postal Service, which are beyond the control of voters.

Of import to this case is the established principle that heightened constitutional scrutiny does not apply to legislation that *enhances* voting rights as opposed to burdening them. That is the message of decisions by the Supreme Court and the Seventh Circuit rejecting efforts by litigants to use the Constitution to expand the availability of absentee ballots beyond what the Illinois General Assembly had already provided. For example, in *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), pretrial detainees in Cook County Jail asserted that the Equal Protection Clause obligated Illinois to make absentee ballots available to them because it had already made such ballots available to, *inter alia*, people who were physically incapacitated for medical reasons. A unanimous Supreme Court concluded that heightened scrutiny was inappropriate for two reasons: first, Illinois's absentee provisions did not classify voters by wealth or race, and second, the record did not indicate any impact on the detainees' "ability to exercise the fundamental right to vote," because the State could allow them to vote in person, perhaps by setting up special polling booths in the jail or providing guarded transportation to the polls. *Id*. at 807, 808 n.6.

Instead, *McDonald* subjected the challenged absentee provisions to rational basis scrutiny. *Id*. at 809. In particular, the Court noted that "a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" *Id*., *quoting Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955). To that end, the Court commented that it was "ironic[]" that "Illinois' willingness to

16

go further than many States in extending the absentee voting privileges" had exposed it to a constitutional challenge seeking to force it to go further still. *Id*. at 810–11. In the end, the Court observed, the record disclosed "not an arbitrary scheme or plan but, rather, the very opposite—a consistent and laudable state policy of adding, over a 50-year period, groups to the absentee coverage." *Id*. at 811.

To be sure, *McDonald* predated the Supreme Court's development of the *Anderson-Burdick* standard. But none of the Supreme Court's or the Seventh Circuit's cases applying *Anderson-Burdick* has ever called *McDonald* into question, and for good reason: those cases deal with voting "restrictions," *Anderson*, 460 U.S. at 789, or "burdens," *Burdick*, 504 U.S. at 434, while *McDonald* continues to stand for the proposition that laws that do not restrict or burden the right to vote are not subject to heightened judicial scrutiny.

The Seventh Circuit's more recent decision in *Griffin* reinforces the point. In *Griffin*, the plaintiffs were working mothers who alleged they were unable to get to the polling place on Election Day. 385 F.3d at 1130. As in *McDonald*, the plaintiffs argued that the Constitution required Illinois to extend to them the same absentee voting rights it had extended to others. The Seventh Circuit, without citing *Anderson* or *Burdick*, had little difficulty rejecting their challenge. How far to extend absentee voting, it held, was "quintessentially a legislative judgment with which we judges should not interfere unless strongly convinced that the legislative judgment is grossly awry." *Id*. at 1131.

The question raised in this case is, at its core, the same as was considered in the *Griffin* case—how far the State legislature may permissibly extend absentee voting. And as the Seventh Circuit has already held, such considerations are firmly within the purview of the legislature rather

than the judiciary. Moreover, the Illinois Ballot Receipt Deadline does not burden or restrict anyone's ability to vote, and should not be subjected to heightened scrutiny.

Even if the *Anderson-Burdick* test applies, the Illinois Ballot Receipt Deadline easily passes that test. The "burden" placed on Plaintiffs is minimal (or, as discussed above, nonexistent), and therefore rational basis scrutiny applies. *Libertarian Party*, 108 F.3d at 773. The Illinois Ballot Receipt Deadline easily passes rational basis, as it is rationally related to the State's "important regulatory interests" (*id.*) in allowing as many voters as possible to vote, regardless of whether they are able to go to a polling location on Election Day. Thus, Plaintiffs fail to state a First Amendment claim.

### B. Plaintiffs cannot state a claim for disenfranchisement through vote dilution.

Plaintiffs' claims under the First Amendment also fail because they cannot state a claim for disenfranchisement through vote dilution. Vote dilution may be a viable voting claim in certain contexts, such as when laws structurally devalue one group's votes over another's. *See, e.g., Reynolds v. Sims*, 377 U.S. 533, 563–64 (1964). But the "Constitution is not an election fraud statute." *Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)). Plaintiffs cannot use the vote-dilution line of cases to make it more difficult for their fellow citizens to vote. *Cf. Short v. Brown*, 893 F.3d 671, 677–78 (9th Cir. 2018) ("Nor have the appellants cited any authority explaining how a law that makes it easier to vote would violate the Constitution."). To the contrary, courts have routinely rejected such efforts. *See Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029, 1031–32 (8th Cir. 2013); *Bodine*, 788 F.2d at 1272; *Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo*., 472 F.2d 121, 122 (8th Cir. 1973) (the federal court is not "the arbiter of disputes over whether particular persons were or were not entitled to vote or over alleged irregularities in the transmission and handling of absentee voter ballots"); *Paher v. Cegavske*, No.

3:20-cv-243, 2020 WL 2748301, at *6–7 (D. Nev. May 27, 2020); *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406–07 (E.D. Pa. 2016).

Similarly, Plaintiffs set forth no allegations indicating that the Illinois Ballot Receipt Deadline has prevented them from voting or running for office, or even burdened their ability to vote or run for office. As discussed in detail above, the Illinois Ballot Receipt Deadline is designed to encourage voting and make it easier to vote. Because Plaintiffs also fail to allege facts that could lead this could to conclude that plaintiffs have stated a claim to relief that is plausible on its face that the Ballot Receipt Deadline impedes their First Amendment rights to vote or to stand for office, their First Amendment claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated: July 12, 2022

Respectfully Submitted,

KWAME RAOUL
Attorney General of Illinois

   */s/ Amanda L. Kozar*
AMANDA L. KOZAR
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-6534
Amanda.Kozar@ilag.gov