IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. BOST, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>THE ILLINOIS STATE BOARD OF ELECTIONS, et al.,<br>　　　　　　　　Defendants. | Civil Action No. 1:22-cv-02754 |

## **DECLARATION OF MICHAEL J. BOST**

I, Michael J. Bost, declare as follows:

1.　　I am a resident of Jackson County, Illinois and a plaintiff in this lawsuit.

2.　　I am registered to vote in Jackson County and voted in the county in the 2020 general federal election.

3.　　I am currently a member of the United States House of Representatives and represent Illinois' 12th Congressional District.

4.　　I was first elected to represent Illinois' 12th Congressional District in 2014. I ran for reelection in 2016, 2018, and 2020.

5.　　Before the recent redistricting, the 12th District included 12 Illinois counties, in whole or part. Following the recent redistricting, the 12th District now includes 34 counties, in whole or part.

6.　　On June 28, 2022, I was renominated by Republican voters, and I am again a candidate to represent Illinois' 12th Congressional District in the upcoming November 8, 2022, general federal election.

7.　　Prior to running for Congress, I was a member of the Illinois' House of Representatives. I was first elected to the Illinois House of Representatives in 1994.

- 2 -

8.   I have been a candidate for elected office both under Illinois' previous ballot receipt deadline (on or before Election Day) and following the 2005 amendment to 10 ILCS 5/19-8, which initially held absentee voting open fourteen days after Election Day.  2005 Ill. Laws 557 (P.A. 94-557).

9.   I have also been a candidate for office after Illinois again amended Section 19-8(c). 2013 Ill. Laws 1171 (P.A. 98-1171).  Following that change, Illinois expanded from holding voting open fourteen days after Election Day only for absentee ballots to holding voting open for its vote-by-mail ("VBM") program.  The inclusion of ballots from the VBM program dramatically increased the number of ballots received during the fourteen days following Election Day.

10.   My congressional campaign has spent, and will spend, money, time, and resources to monitor and respond as needed to ballots received by state election officials after the national Election Day.

11.   Before the 2005 amendment to Section 19-8(c), it was much easier for my campaign to organize Election Day activities.  Back then, campaigns typically only needed volunteers for early voting and Election Day.  Sometimes volunteers would be needed to monitor canvassing activities the day after Election Day if canvassing took too long on Election Day evening, but generally my campaign ended on Election Day evening.

12.   However, the monitoring of ballots has become significantly more difficult since 2005.  Previously, my campaign needed to focus its efforts on observing ballots on or before "Election Day."  Now, it must invest resources on "Election Day" operations that last fourteen days rather than one day.

13. Since Illinois amended its election code to hold voting open fourteen days after Election Day, I have had to organize, fundraise, and run my campaign for fourteen additional days in order to monitor and respond as needed to ballots received after the national Election Day.

14. Since the 2005 changes, it has become significantly more difficult to find "Election Day" volunteers, especially those willing volunteer during the fourteen-day period after Election Day.

15. The volume of votes arriving after Election Day has grown significantly, especially after Illinois replaced limited absentee voting with vote-by-mail ("VBM") in 2013. Following that change, the number of ballots arriving after Election Day has substantially increased almost every year. The volume of "Election Day" resources needed has become even greater because many of these late-arriving ballots have discrepancies (e.g., insufficient information, missing signatures, dates, or postmarks) that need to be resolved.

16. Each resolution of these discrepancies takes time, assuming county election staff even go through the trouble, rather than just accepting possibly deficient ballots in bulk. This resolution process diverts volunteer and staff resources from my campaign. Moreover, my campaign needs to both monitor and evaluate whether to object to the counting of deficient ballots. This costs my campaign time, money, volunteers and other resources.

17. For example, my campaign organizes and sends poll watchers to each county courthouse in my district. That means this election my campaign will make every effort to be at the courthouses in every county in the 12th District. Because of the number of counties, this potentially means my campaign will invest hundreds of volunteer and campaign staff to monitor late arriving ballots during the two weeks after Election Day. In some instances, my poll watchers may be the only Republican poll watchers at a courthouse. If an irregularity is observed by a poll

watcher during this fourteen-day period, my campaign will need to consult with campaign staff or lawyers to determine the appropriate action, if any.

18. My campaign is made up of a mix of both paid and volunteer poll watchers, lawyers, and other campaign staff. The campaign relies on both paid and volunteer staff during this fourteen-day period, which depletes its volunteer and financial resources. Before Illinois extended its receipt deadline, my campaign would have avoided such depletion.

19. Late-arriving, deficient ballots exacerbate the expenses my campaign incurs as a result of Section 19-8(c).

20. Another example involves my campaign's ballot chase program. This program is used to evaluate my campaign's get-out-the-vote efforts and other concerns. Because Section 19-8(c) holds voting open an additional fourteen days, my campaign has to keep this program active fourteen additional days longer than it would have prior to the 2005 amendment.

21. For the November 3, 2020, the State Board of Elections reported 266,417 vote-by-mail ballots statewide were received during the period from November 3rd through November 17th. Some of the late-arriving ballots reported by the State involved my race for the Illinois' 12th Congressional District.

22. As a representative and candidate for federal office, I am entitled to have election results certified with votes received in compliance with the federal Election Day statutes. I am also entitled to rely on provisions of federal law in conducting my campaign, including in particular, resources allocated to the post-election certification process.

23. Because Section 19-8(c) does not comply with federal Election Day statutes, I risk injury if untimely and illegal ballots cause me to lose my election for federal office.

24. Because Section 19-8(c) does not comply with federal Election Day statutes, I risk injury because my margin of victory in my election may be reduced by untimely and illegal ballots. Election results are the best measure for my constituents and me to evaluate the public's opinion about my effectiveness as Congressman for the 12th Congressional District. A diminished margin of victory will lead to the public perception that my constituents have concerns about my job performance as the representative for the 12th Congressional District. Negative and positive perceptions about my effectiveness influence numerous third parties, such as future voters, Congressional leadership, donors, and potential political opponents.

25. By counting untimely votes and those received in violation of the federal Election Day deadline, the state of Illinois substantially increases the pool of total votes cast and dilutes the weight of my timely cast vote. More votes will be counted than the law allows to be counted, resulting in dilution of my vote.

26. Because Illinois' receipt deadline holds voting open two additional weeks after Election Day, I am concerned that it gives bad actors, regardless of their political affiliation, more time to better target and affect close elections, including my election.

27. For all of these reasons, I am harmed by the provisions of Illinois law that hold voting open fourteen days after federal Election Day.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated: July 15, 2022

                                                MICHAEL J. BOST