IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. BOST, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ILLINOIS STATE BOARD OF )<br>ELECTIONS and BERNADETTE )<br>MATTHEWS, in her capacity as the )<br>Executive Director of the Illinois State )<br>Board of Elections, )<br>)<br>Defendants. ) | Case No. 22-CV-2754<br><br>Judge John F. Kness |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Illinois State Board of Elections ("SBE") and Bernadette Matthews, in her official capacity as the Executive Director of the SBE, as the only Defendants named in this action, by their attorney Kwame Raoul, Illinois Attorney General, submit the following memorandum in opposition to Plaintiffs' motion for partial summary judgment.

**INTRODUCTION**

The Illinois Ballot Receipt Deadline statute, 10 ILCS 15/19-8(c), ensures that ballots cast by lawful voters and received in the mail by election officials in the 14 days after Election Day are counted. Under the statute, such ballots are counted if: (1) the ballots are postmarked on or before Election Day, or (2) if the U.S. Postal Service fails to postmark them, the ballot certification completed by the voter is dated on or before Election Day.[1] This law is not new and is crucial to

---

[1] The vote-by-mail process in Illinois requires a voter to seal their ballot in an envelope with a certification that the voter must date and sign under penalty of perjury. *See* 10 ILCS 5/19-5, 29-10.

ensuring the voting rights of millions of Illinoisans who avail themselves of the right to vote by mail.

Nevertheless, and notwithstanding myriad lawsuits that have previously been filed and found meritless on this same subject, Plaintiffs bring this lawsuit seeking to limit the ability of Illinois voters to vote by mail. Specifically, through their motion for partial summary judgment, Plaintiffs seek a premature judicial ruling that the Illinois Ballot Receipt Deadline, set forth in 10 ILCS 15/19-8(c), violates the text of the Federal Election Day Statutes set forth at 2 U.S.C. § 7 and 3 U.S.C. § 1, and violates their right to vote and to stand for office under the First and Fourteenth Amendments to the United States Constitution.

As Defendants have explained at length in their motion to dismiss [ECF #26], Plaintiffs do not have standing to bring this instant lawsuit – a threshold issue which is properly decided before any motions for summary judgment are considered. But even setting aside that fatal flaw, Plaintiffs do not, and cannot, point to any case law supporting their argument that permitting mail-in ballots that are postmarked on or before Election Day to be counted for a period of 14 days following Election Day contravenes any federal laws. Multiple courts have held that similar statutes from other states do not violate the Election Day Statutes. Nor do Plaintiffs set forth any case law supporting their First Amendment claims. Plaintiffs' motion for partial summary judgment should be denied accordingly.

## ARGUMENT

### I. Plaintiffs lack standing to bring this action.

As a preliminary matter, as set forth in the Defendants' memorandum in support of their motion to dismiss (ECF #26), Plaintiffs lack standing to bring this lawsuit. Defendants incorporate those arguments here rather than repeating them. However, Defendants note that none of the complaints set forth by Plaintiffs in their respective declarations do anything to overcome their

lack of standing to bring this lawsuit. Rather, Plaintiffs simply assert generalized grievances about government and seek relief that "no more directly and tangibly benefits [them] than it does the public at large." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992); *see also Fairchild v. Hughes*, 285 U.S. 126, 129-30 (1922) ("Plaintiff has asserted only the right, possessed by every citizen, to require that the Government be administered according to law . . . . Obviously this general right does not entitle a private citizen to institute in the federal courts a suit.").

Indeed, at the summary judgment stage, Plaintiffs' burden to show standing is heightened: "Alleging injury for purposes of standing is not the same as submitting adequate evidence of injury . . . to survive a motion for summary judgment." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016). The allegations in Plaintiffs' declarations—and particularly their allegations regarding the need to spend increased time, energy, and money monitoring the counting of ballots, *e.g.*, ECF #31-4 at ¶¶ 10-18, ECF# 31-5 at ¶¶ 10-13—wholly fail to meet that burden. For one, as discussed, this injury is not sufficiently particularized "when, in fact, all candidates in [Illinois], including [Plaintiffs'] opponent[s], are subject to the same rules." *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 351 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *see also Donald J. Trump for President v. Cegavske*, 488 F. Supp. 3d 993, 1003 (D. Nev. 2020) ("Plaintiffs seek to muster '*competitive* standing,' yet their candidates face no harms that are unique from their electoral opponents."). Plaintiffs submit no evidence beyond their declarations why the Ballot Receipt Deadline injures *them* specifically—nothing to substantiate the notion that they face "unique" harms, *Cegavske*, 488 F. Supp. 3d at 1003, or labor under any disadvantage not also suffered by their opponents. Nor do plaintiffs make any attempt to identify why what they describe as "late-arriving ballots," ECF # 31-4 at ¶ 21, might actually have any impact on the election, for instance, by affecting the

results in Plaintiff Bost's election. Absent "adequate evidence"—not merely bare assertion—of any such injury, *Diedrich*, 839 F.3d at 591, Plaintiffs cannot meet their burden of showing standing at this juncture.

For these reasons, as well as the reasons given in Defendants' memorandum in support of their motion to dismiss (ECF #26), Plaintiffs lack standing to bring their lawsuit. Their motion for partial summary judgment should be denied for this reason alone.

**II. The Illinois Ballot Receipt Deadline statute does not contravene the text of Federal Election Day Statutes.**

For the reasons previously set forth by Defendants in their Motion to Dismiss [ECF # 25, 26], Plaintiffs' claims asserted pursuant to 2 U.S.C. § 7 and 3 U.S.C. § 1 (the "Federal Election Statutes") are unavailing and should be dismissed. Defendants incorporate those arguments here, but do address the arguments set forth by Plaintiffs in their motion for partial summary judgment. [ECF #33.]

Plaintiffs rely in large part on three cases to support their argument that the Illinois Ballot Receipt Deadline statute contravenes federal law – specifically, *Love v. Foster*, 522 U.S. 67 (1997); *Maddox v. Bd. of State Canvassers*, 149 P.2d 112 (Mont. 1944); and *Voting Integrity Project, Inc. v. Keisling,* 259 F.3d 1169 (9th Cir. 2001). But those cases are not controlling here.

In *Foster*, the issue was whether Louisiana's system of holding an open primary in October of federal election years, with voting occurring on federal Election Day only if a candidate for a given office did not receive a majority at the open primary, violated 2 U.S.C. § 7. *See generally Love v. Foster*, 522 U.S. 67 (1997). The Supreme Court ultimately held that such a system did violate the federal election statutes, as "a contested selection of candidates for a congressional office that is concluded as a matter of law before the federal election day, with no act in law or in fact to take place on the date chosen by Congress" clearly violates § 7. *Foster*, 522 U.S. at 72. The

*Foster* court went on to explain that its judgment was buttressed by a consideration of Congress's intent in creating a unified federal election day. *Id.* at 73. Specifically, "Congress was concerned both with the distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States, and with the burden on citizens forced to turn out on two different election days to make final selections of federal officers in presidential election years." *Id.*

Here, Plaintiffs complain about a State statutory scheme that permits mail-in ballots to be counted for up to fourteen days *after* the federal Election Day, so long as those ballots are postmarked on or before Election Day. ECF #1. Unlike in *Foster*, there is no concern that the need for the federally mandated Election Day is preempted by the Illinois Ballot Receipt Deadline, as voting does largely take place on the federal Election Day. Moreover, there is also no danger of the distortion of the voting process, as all ballots submitted via mail must be completed and postmarked on or before the federal Election Day – that a fourteen-day window exists to allow for the counting of all mail-in ballots does not pose the same potential problem as an early federal election in one State, the results of which could serve to influence later voting in other States. Nor does the Illinois Receipt Deadline require that voters turn out on two different election days to make final selections of federal officers.

In fact, the *Way* Court previously considered a similar challenge to a New Jersey statute that permitted mail-in ballots to be counted if they were postmarked on or before Election Day or, if lacking a postmark, were received within 48 hours of the closing of the polls. *Way*, 492 F. Supp. 3d at 371-72. There, the Court found that the New Jersey statute in question was "not preempted by the Federal Election Day Statutes because the Federal Election Day Statutes are silent on methods of determining the timeliness of ballots." *Id.* at 371. The *Way* Court went on to note that

5

Plaintiffs directed the Court to "no federal law regulating methods of determining the timeliness of mail-in ballots or requiring that mail-in ballots be postmarked." *Id.* at 372. And where Congress "declines to preempt state legislative choices," the Elections Clause vests the states with responsibility for the "mechanics of congressional elections." *Id.*

Further undermining Plaintiffs' arguments is the *Keisling* Court's discussion of the "long history of congressional tolerance, despite the federal election day statute, of absentee balloting and express congressional approval of absentee balloting when it has spoken on the issue." *Keisling*, 259 F.3d at 1175. In *Keisling*, Plaintiffs alleged that an Oregon statute that permitted Oregonians to vote by mail for a substantial period of time prior to, as well as on, federal election day violated the federal election laws. *Id.* at 1170. The district court granted summary judgment in favor of the State, and the Ninth Circuit affirmed. *See generally Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169 (9th Cir. 2001).

Like the *Foster* case, *Keisling* also dealt with a challenge to *early* voting – not the counting after Election Day of votes submitted on or before federal Election Day, – and is thus not on point here. However, the *Keisling* Court's discussion of Congressional treatment of absentee voting is instructive. Absentee voting began during the Civil War as a means of providing soldiers the ability to vote, and States have continued to provide for expanded absentee voting ever since. *Id.* at 1175. Congress has also expressed its support for absentee voting, and in fact has recently required, not just allowed, states to provide for absentee voting in federal elections. *Id.* The Court in *Keisling* went on to explain that the Supreme Court has already provided the device for reconciling the federal election day statute and the federal absentee voting statute: "a definition of 'election' that treats election day as the 'consummation' of the process rather than any day during which voting takes place." *Id.* at 1176. As the *Donald J. Trump for President, Inc.* court observed, "[I]f the

6

Federal Election Day Statutes supplanted all discretion by the states on the timing of the election, it is doubtful that the early and absentee voting schemes discussed in *Bomer, Millsaps*, and *Keisling* could be upheld." 492 F. Supp. 3d at 367.

Plaintiffs argue that the "consummation" of an election, or the "final act of selection," does not take place until ballots are actually received by election officials, and cite to *Maddox v. Bd. of State Canvassers*, 149 P.2d 112 (Mont. 1944) to support that proposition. ECF #33 at 4-5. As an initial matter, the *Maddox* case was decided by the Montana Supreme Court in 1944; thus, the decision is not binding on this Court. Moreover, the case is not persuasive authority, as it dealt with a different state's laws and the decision was not rendered within the same context as the election cases of today. In addition to those shortcomings, the *Maddox* case is inapposite here for yet another reason. There, the Montana statutory scheme provided that while election day was "the Tuesday next after the first Monday in November. . . the election may be conducted and the polls kept open for the receipt of ballots by the elections officials until December 25, 1944, and the final result determined only on December 30th." *Id.* at 222, 225. The Montana election statute thus contemplated a seven-week delay between federal Election Day and the final determination of the election results, and in the process deprived Montana of representation in the electoral college, which met on the first Monday after the second Wednesday in December. *Id.* at 222.

The *Maddox* court observed that it may be a violation of the constitutional command that "all elections shall be free and open" to conduct the election "in such a way as to defeat its purpose by ascertaining the results too late for presidential electors to perform their duty, and for other elected officials to qualify for office." *Id.* at 225. Such is not the case here.

As Defendants explain at length in their motion to dismiss [ECF #26], courts throughout the United States. have already determined that a state's discretion and flexibility in establishing

the time, place, and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with the federal elections laws on the subject. *See, e.g., Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000). Moreover, the argument that a mail-in ballot is not a legal vote unless it is marked and cast on or before Election Day, and that the Federal Election Day Statutes preempt any state law that permits counting ballots cast after Election Day has already been made and rejected. *See, e.g., Way*, 492 F. Supp. 3d 354, 369 (D.N.J. 2020). Though Plaintiffs recite a litany of sources outlining the history of the Federal Election Day Statutes, they point to no case law holding that permitting mail-in ballots to be counted for 14 days following Election Day, provided they are postmarked on or before Election Day, violates the Federal Election Day Statutes.

Plaintiffs have set forth no authority supporting their assertion that the Illinois Ballot Receipt Deadline violates the Federal Election Day Statutes, and their motion for partial summary judgment should be denied.

### III. The Illinois Ballot Receipt Deadline statute does not burden Plaintiffs' right to vote or right to stand for office under the First or Fourteenth Amendment.

In their partial summary judgment motion, Plaintiffs set forth no arguments supporting their assertion that the Illinois Ballot Receipt Deadline burdens their right to vote and to stand for office that have not already been addressed by Defendants in their motion to dismiss. [ECF #26.] As such, Defendants refer to and incorporate the arguments set for in their motion to dismiss.

### CONCLUSION

As discussed above and in Defendants' motion to dismiss, Plaintiffs lack standing to bring this lawsuit and the Illinois Ballot Receipt Deadline does not violate the Federal Election Day Statutes or Plaintiffs' constitutional rights. For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for partial summary judgment.

Dated: August 22, 2022

                                                Respectfully Submitted,

KWAME RAOUL                          */s/ Amanda L. Kozar*
Attorney General of Illinois             AMANDA L. KOZAR
                                                Assistant Attorney General
                                                Office of the Illinois Attorney General
                                                100 West Randolph Street, 13th Floor
                                                Chicago, Illinois 60601
                                                (312) 814-6534
                                                Amanda.Kozar@ilag.gov