IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. BOST; LAURA POLLASTRINI; and SUSAN SWEENEY, <br><br> Plaintiffs, <br><br> v. <br><br> THE ILLINOIS STATE BOARD OF ELECTIONS; and BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Board of Elections <br><br> Defendants. | Civil Action No. 1:22-cv-02754 |

**STATEMENT OF INTEREST OF THE UNITED STATES**

I.      INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517 which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents an important question relating to enforcement of the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 52 U.S.C. §§ 20301 to 20311, as amended by the Military and Overseas Voter Empowerment Act of 2009, Pub L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act").[1]

The Attorney General is charged with the responsibility of enforcing UOCAVA, 52 U.S.C. § 20307. The United States submits this statement of interest to address legal questions regarding the post-election counting of ballots cast in person or by mail on or before election day. Permitting the counting of otherwise valid ballots cast by election day even though they are received thereafter does not violate federal statutes setting the day for federal elections. This practice not only complies with federal law but can be vital in ensuring that military and overseas voters are able to exercise their right to vote. The United States expresses no view on any issues other than those set forth in this brief.

II.     PROCEDURAL BACKGROUND

The Illinois election code authorizes voting by mail and provides that vote-by-mail ballots received "after the polls close on election day" and before "the close of the [fourteen-day] period for counting provisional ballots" shall be counted. 10 Ill. Comp. Stat. (ILCS) § 5/19-8(c) (2022); *id.* § 5/18A-15(a). The Illinois statute also requires that such ballots be "postmarked no later than election day." *Id.* Alternatively, if the ballot has no postmark or trackable bar code, it

---

[1] The provisions of UOCAVA were originally codified at 42 U.S.C. § 1973ff *et seq.*

1

must have a certification date, which is provided by the voter at the time of completing the ballot, on election day or earlier.[2] *Id.*

On May 25, 2022, plaintiffs Michael J. Bost, Laura Pollastrini, and Susan Sweeney filed a complaint against the Illinois State Board of Elections and its Executive Director, Bernadette Matthews, challenging Illinois's law that provides for counting ballots cast by election day and received within the fourteen-day period following election day. Compl., *Bost v. Ill. Bd. of Elections*, No. 1:22-cv-02754 (N.D. III. May 25, 2022), ECF No. 1. Plaintiffs seek a judgment declaring Illinois's ballot receipt deadline to be unlawful and an injunction prohibiting counting any ballots received after election day, regardless of their postmark date.

Defendants Illinois State Board of Elections and its Executive Director moved to dismiss Plaintiffs' complaint on July 12. Def. Mot. Dismiss Pls.' Compl., ECF No. 25. On July 15, Plaintiffs moved for partial summary judgment on Counts I and II, requesting a declaration that 10 ILCS § 5/19-8(c) violates 2 U.S.C. § 7, the federal statute setting a uniform date for Congressional elections.[3] Pls.' Mot. Summ. J., ECF No. 32. The Court set a consolidated briefing schedule for Defendants' Motion to Dismiss and Plaintiffs' Motion for Partial Summary Judgment, with responses to both motions due on August 22, and replies due on September 7.

---

[2] The certification requirement in Illinois law serves as an indicia that the ballot has been voted, executed, and sent by the close of polls on election day only in those instances where no postmark is evident.

[3] Counts I and II of Plaintiffs' Complaint allege a violation of the rights to vote and stand for office, under 42 U.S.C. § 1983. Compl., ECF No. 1. Despite Plaintiffs' Motion for Partial Summary Judgment being directed toward Counts I and II, the motion does not discuss alleged violations of 42 U.S.C. § 1983. *See generally* Pls.' Mem. Supp. Mot. Summ. J., ECF No. 33. The United States understands Plaintiffs' motion to seek relief as to the alleged violation of 2 U.S.C. § 7, which is labeled Count III in Plaintiffs' Complaint.

2

### III. LEGAL STANDARD

In assessing a motion to dismiss, courts "accept all of the well-pleaded factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff." *Help At Home Inc. v. Medical Capital LLC*, 260 F.3d 748, 752 (7th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (internal quotation marks omitted).

Where the facts are not in dispute, summary judgment may be granted prior to the parties engaging in discovery. *See Spierer v. Rossman*, 798 F.3d 502, 506 (7th Cir. 2015). Summary judgment is appropriate only where the moving party demonstrates that based on the evidence, viewed in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### IV. STATUTORY BACKGROUND

UOCAVA guarantees members of the uniformed services absent from their place of residence due to service on active duty (and their spouses and dependents who are also absent due to that active service) and United States citizens residing overseas the right "to vote by absentee ballot in general, special, primary, and runoff elections for federal office." 52 U.S.C. § 20302(a)(1). UOCAVA reflects Congress's determination that participation in federal elections by military and overseas voters is a vital national interest. *See Bush v. Hillsborough Cnty. Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000) ("[Voting is] a sacred element of the democratic process. For our citizens overseas, voting by absentee ballot may be the only practical means to exercise that right. For the members of our military, the absentee

ballot is a cherished mechanism to voice their political opinion. . . . [It] should be provided no matter what their location.").

The MOVE Act reaffirmed Congress's commitment to ensuring that UOCAVA voters have sufficient time to receive, mark, and return their ballots in time to be counted. *See* MOVE Act, 156 Cong. Rec. S4513, S4518 (daily ed. May 27, 2010). To provide sufficient time for these voters to exercise their right to vote, the MOVE Act amended UOCAVA to require that states transmit validly requested ballots to UOCAVA voters at least 45 days before an election for federal office when the request is received by that date. 52 U.S.C. § 20302(a)(8) ("Each state shall . . . transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter . . . not later than 45 days before the election."); 52 U.S.C. § 20302(g)(1)(A) ("the purpose [of the 45-day requirement] is to allow absent uniformed services voters and overseas voters enough time to vote"); *see also* 156 Cong. Rec. at S4518 (discussing development of 45-day deadline based upon evidence before Congress). Despite the adoption of the MOVE Act's 45-day advance-transmission requirement for UOCAVA ballots, military and overseas voters continue to face difficulties having sufficient time to receive, mark, and return their ballots.[4] Illinois's vote-by-mail ballot receipt deadline helps to ensure that otherwise valid ballots cast by the state's military and overseas voters, among other citizens, on or before election day are

---

[4] According to the Federal Voting Assistance Project's 2020 Report to Congress concerning the most recent general election, "there were 1,249,601 UOCAVA ballots transmitted to voters from election officials. Election officials received 913,734 voted ballots issued by states, and 33,027 [Federal Write-In Absentee Ballots]." *2020 Report to Congress,* FED. VOTING ASSISTANCE PROGRAM 55, https://perma.cc/CVH4-X97K. The median return rate as a percentage of UOCAVA ballots transmitted among the various states was 82.3 percent. *Id.* at 57. The Report notes that "[m]issing the deadline was the most common reason for rejection [of returned ballots] among both [groups of UOCAVA voters,] at rates of 44.7 percent for Uniformed Service members and 41.3 percent for overseas civilians." *Id.*

4

received in time to be counted, notwithstanding the logistical challenges that can often result from transporting ballots from overseas or distant locations across the country.

V.     **ARGUMENT**

**A. Counting ballots mailed on or before election day does not violate the Federal Election Day Statutes.**

"The Elections Clause of the Constitution, Art. 1, § 4, cl. 1 . . . is a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citation omitted). "[A] state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject." *Voting Integrity Project v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000); *Foster*, 522 U.S. at 68. By enacting 2 U.S.C. §§ 1 and 7 and 3 U.S.C. § 1 ("Federal Election Day Statutes"), Congress exercised its power under the Elections Clause to set federal election day as the first Tuesday after the first Monday in November. In Illinois, vote-by-mail ballots are counted if postmarked on or before election day and received during the fourteen calendar days following the election. 10 ILCS § 5/19-8; *id.* § 5/18A-15(a). Provisional ballots in Illinois are also examined and tallied (if valid) during this fourteen-day period, a practice Plaintiffs do not challenge. *Id.* § 5/18A-15(a). The text of the Federal Election Day Statutes does not preempt the acceptance of ballots postmarked or certified on or before election day and received within the fourteen-day period for counting ballots provided by state law.[5]

---

[5] Numerous other states aside from Illinois have adopted ballot receipt deadlines that extend for some period of time after election day, either for voters by mail generally or for some or all UOCAVA voters in particular. *Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots*, NAT'L CONF. OF STATE LEGISLATURES (July 12, 2022), https://perma.cc/Z6DV-SRPL

The Supreme Court has embraced a narrow view of what state laws the Federal Election Day Statutes preempt, imposing only the limitation that an election may not conclude prior to election day. *Foster*, 522 U.S. at 71, 72 n.4. Plaintiffs argue by implication first that *Foster*'s holding applies equally to *post*-election day ministerial actions related to the transmission, processing, and counting of mail-in ballots, and second that tallying ballots cast by mail on or before election day constitutes prohibited post-election day voting. Both of these assertions are incorrect.

In *Foster*, the Supreme Court considered Louisiana's practice of holding in October of federal election years an "open primary," which "provide[d] an opportunity to fill" Congressional offices "without any action to be taken on federal election day." *Id.* at 68-69. A candidate who received a majority of the votes in the open primary was "elected" *Id.* at 70. As a practical matter, a candidate was elected in over 80 percent of Louisiana's open primaries. *Id.* The Court, finding that Louisiana's practice violated 2 U.S.C. § 7, wrote: "[I]t is enough to

---

(noting states with extended ballot receipt deadlines that apply generally and are not targeted specifically at UOCAVA voters); *see also Voting Assistance Guide*, FED. VOTING ASSISTANCE PROGRAM, https://perma.cc/78G5-VSXK (compiling information on ballot receipt deadlines for each state, including those that apply specifically to UOCAVA voters, such as Florida's 10-day extension to receive ballots after election day that only applies to UOCAVA voters who are overseas and only if their ballots returned by mail are postmarked/dated by election day for certain elections, and Pennsylvania's seven-day extension after election day to receive ballots from UOCAVA voters that are signed as having been mailed by the day before election day). In addition, the Uniform Military and Overseas Voters Act (UMOVA), a model statute drafted by the Uniform Law Commission, suggests that states adopt various measures to protect UOCAVA voters, not dissimilar to some of those adopted here by Illinois. UMOVA suggests an extended post-election day ballot receipt deadline, *e.g.*, as the "latest deadline for completing the county canvass or other local tabulation used to determine the official results." *See* UMOVA § 12. UMOVA also suggests that timeliness of voting a UOCAVA ballot can be proven in several ways, *e.g.*, evidence such as a postmark or certification by the voter under penalty of perjury. *See* UMOVA §§ 10, 12. The Uniform Law Commission indicates that UMOVA has been adopted by sixteen states. *See Military and Overseas Voters Act*, UNIF. L. COMM'N, https://perma.cc/5AVP-QP7X.

resolve this case to say that a contested selection of candidates for a congressional office that is concluded as a matter of law before the federal election day" violates the Federal Election Day Statutes. *Id.* at 72. So long as there remains under state law an "act in law or in fact to take place on" election day, *id.*, *Foster* does not support the preemption of that state law. *See id.* at 71 (noting the legality of holding a run-off election after federal election day); 2 U.S.C. § 8 (allowing states to prescribe procedures for holding elections for vacancies "caused by a failure to elect at the time prescribed by law"). In Illinois, that act is the requirement for the casting of ballots by election day, including the certification and transmission of absentee ballots to election officials, as established by the postmark or certification date. And thus, *Foster* does not support preemption of Illinois's ballot receipt deadline.

By necessity, *calculating* voters' final selection often can stretch into the days following election day, and courts repeatedly have rejected the argument that post-election ballot tallying violates the Federal Election Day Statutes. As the court observed in *Harris v. Fla. Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317 (N.D. Fla. 2000), "while it is possible for everyone to vote on election day, it is highly unlikely that every precinct will be able to guarantee that its votes would be counted by midnight on election day. This has been the case for years, yet votes are not routinely being thrown out because they could not be counted on election day." *Harris*, 122 F. Supp. at 1324-25, *aff'd sub nom. Harris v. Fla. Elections Comm'n*, 235 F.3d 578 (11th Cir. 2000) ("Routinely, in every election, hundreds of thousands of votes are cast on election day but are not counted until the next day or beyond."); *see also Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) ("New Jersey's law permitting the canvassing of ballots lacking a postmark if they are received within forty-eight hours of the closing of the polls

7

is not preempted by the Federal Election Day Statutes because the Federal Election Day Statutes are silent on methods of determining the timeliness of ballots.").

Plaintiffs concede that casting a ballot is distinct from counting a ballot, and that the Federal Election Day Statutes permit post-election day counting. Mem. Supp. Mot. Summ. J. at 13, ECF No. 33. Yet in the same breath, Plaintiffs contend that Illinois's decision to count absentee ballots that were timely cast violates the Federal Election Day Statutes. *Id.* Plaintiffs' position hinges on the Federal Election Statutes prohibiting Illinois from defining the casting of a ballot to include putting it in the mail. But "[p]roviding various options for the time and place of depositing a completed ballot does not change the day for the election." *Millsaps v. Thompson*, 259 F.3d 535, 545 (6th Cir. 2001) (internal quotation marks omitted). Illinois law establishes a mailbox rule for absentee ballots, considering the placement of a marked ballot in the post for delivery to election officials as an act of voting. 10 ILCS § 5/19-8. And Congress has "decline[d] to preempt state legislative choices" such as "methods of determining the timeliness of mail-in ballots." *Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) (quoting *Foster*, 522 U.S. at 69).[6] The plain text of the Federal Election Day Statutes does not preclude state law procedures designating particular times or places for casting, receiving, processing, and counting ballots—in this case, Illinois's statute allowing for the counting of ballots cast by mail on or before election day, provided they are received by officials within fourteen days after election day.

---

[6] Plaintiffs cite a 1944 case from the Montana Supreme Court stating that "[n]othing short of the delivery of the ballot to the election officials for deposit in the ballot box constitutes casting the ballot." Pls.' Mem. Supp. Mot. Summ. J. at 5, ECF No. 33 (quoting *Maddox v. Bd. of State Canvassers*, 149 P.2d 112, 115 (Mont. 1944)). This was true under Montana state law in 1944— the law that court was interpreting. The court premised its holding on the fact that "the state law provides for voting by ballots deposited with the election officials." *Maddox*, 149 P.2d at 115. By contrast, in this case, Illinois law provides for voting by ballots deposited with election officials or deposited in the mail. 10 ILCS § 5/19-8.

The Illinois statute at issue in this case clearly does not permit voters to cast votes after election day is over. Illinois law requires that voters must vote and mail in their ballots on or before election day, before any election results are publicized. This system ensures that there is a level playing field for all voters and that no voters have access to cumulative vote tallies before casting their vote. Federal law does not preclude Illinois's decision to *count* ballots validly cast by mail on or before election day but received and tallied in the following fourteen days. As such, 10 ILCS § 5/19-8 does not conflict with the Federal Election Day Statutes, which set a uniform date for federal general elections. As described more fully herein, Illinois law includes standard measures commonly used in other state laws and in model legislation, and in the United States' own UOCAVA consent decrees, to ensure that mail-in voters have timely voted their ballots and transmitted them back to elections officials by election day and to avoid voters actually casting votes after election day.

**B. Illinois's ballot receipt deadline protects the voting rights of military and overseas voters.**

Absentee voting laws generally are the only means by which U.S. citizens who are deployed in the uniformed services or otherwise living overseas can exercise their right to vote. Despite Congress's repeated efforts, many military and overseas voters have continued to face difficulties exercising their franchise. *See, e.g., Bush*, 123 F. Supp. 2d at 1310. Prior to the adoption of UOCAVA, the "single largest reason for disenfranchisement of military and overseas voters [was] State failure to provide adequate ballot transit time." H.R. Rep. No. 99-765, at 10 (1986). After problems with delayed UOCAVA ballots persisted, Congress enacted the MOVE Act in an attempt to address the issue further. *See* H. Rep. No 111-288, at 744 (2009) (noting that the MOVE Act would "require States to transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter at least 45 days before an election for

9

federal office"); *see also* Cong. Rec. S4518 (daily ed. May 27, 2010) (Statement of Sen. Schumer) (describing Congress's adoption of the 45-day requirement as an effort to provide sufficient time for UOCAVA voters to request, receive, and cast their ballots in time for them to be counted). This history of Congressional action reflects a strong commitment to ensuring military service members and overseas citizens have access to the ballot box comparable to that enjoyed by domestic civilians.

As noted above, the Attorney General is charged with the responsibility of enforcing UOCAVA, 52 U.S.C. § 20307. Since UOCAVA's enactment, the United States repeatedly has found it necessary to take action against states that transmitted ballots late, in order to prevent military and overseas voters from being disenfranchised in particular federal elections. *See., e.g., United States v. Alabama*, 857 F. Supp. 2d.1236, 1242 (M.D. Ala. 2012) (finding that "[t]he State denies its legal obligation to ensure UOCAVA compliance; the State has violated [UOCAVA] in two consecutive elections, the extent of these violations has been widespread, systemic, and worsening; and the State has failed to establish mechanisms to avoid UOCAVA voter disenfranchisement."); *United States v. New York*, No. 1:10-cv-1214, 2012 WL 254263, at *1 (N.D.N.Y. 2012) (observing "[h]aving had ample opportunity to correct the [UOCAVA] problem, [the state] ha[d] failed to do so"). In most of these UOCAVA cases, the remedy has involved extending the deadline after election day for receiving military and overseas voters' absentee ballots cast by election day. For example, just since the year 2000, UOCAVA ballot receipt deadlines were extended by court-ordered consent decree, court order, or settlement agreement, allowing validly-cast ballots to be received and counted after election day, in 29 of the United States' cases and agreements. Indeed, the use of such ballot receipt extensions as remedies for late transmission of UOCAVA ballots stretches back to the earliest of the United

10

States' cases brought to enforce UOCAVA after that federal statute was enacted in 1986. *See Cases Raising Claims Under the Uniformed and Overseas Citizen Absentee Voting Act*, DEP'T OF JUST., (Mar. 24, 2022), https://perma.cc/7LZE-7Q7H. Many of the agreements or court orders addressing UOCAVA violations based on late ballot transmissions have extended ballot receipt deadlines for UOCAVA voters for the number of days after election day commensurate with the number of days that UOCAVA ballots were transmitted after the federal law deadline, in order to protect the right to vote of military and overseas voters who did not receive ballots in time due to late transmission by election officials.[7] In Illinois alone, the United States has sued the State for late ballot transmissions to UOCAVA voters twice in the last twelve years. The remedies in those cases have included an extension of Illinois's existing ballot receipt deadline and other changes to election calendars to ensure UOCAVA voters have sufficient time to receive, mark, and return their ballots. Consent Decree, *United States v. Illinois*, No. 1:10cv06800 (N.D. Ill. Oct. 22, 2010); Consent Decree, *United States v. Illinois*, No. 1:13cv00189 (N.D. Ill. Jan. 11,

---

[7] *See, e.g., United States v. West Virginia*, No. 2:14-cv-27456 (S.D. W.Va. Nov. 3, 2014) (extending ballot receipt deadline by 7 days); *United States v. Wisconsin*, No. 3:12-cv-00197 (W.D. Wis. Mar. 23, 2012) (extending deadline by number of days of late transmission); *United States v. New York*, No. 1:09-cv-00335 (N.D.N.Y. Mar. 26, 2009) (extending deadline by 6 days); *United States v. Michigan*, No. L 88-208 CA5 (W.D. Mich. July 29, 1988) (extending deadline by 10 days); *United States v. Idaho*, No. 88-1187 (D. Idaho May 21, 1988; entered May 23, 1988) (extending deadline by 10 days); *United States v. Oklahoma*, No. CIV-88-1444 P (W.D. Okla. Aug. 22, 1988) (extending deadline by 10 days); *United States v. New Jersey*, No. 3:90-cv-02357 (D.N.J. June 5, 1990) (extending deadline by 10 days); *United States v. Colorado*, No. 1:90-cv-01419 (D. Colo. Aug. 10, 1990) (extending deadline by 10 days); *United States v. New Jersey*, No. 3:92-cv-2403 (D.N.J. June 2, 1992) (extending deadline by 14 days); *United States v. Michigan*, No. 1:92-cv-00529 (W.D. Mich. Aug. 3, 1992) (extending deadline by 20 days); *United States v. Georgia*, No. 1:04-cv-02040 (N.D. Ga. July 16, 2004) (extending deadline by 3 business days). Many UOCAVA cases are collected at the Department of Justice's website. *See Voting Section Litigation*, DEP'T OF JUST. (Aug. 30, 2022), https://perma.cc/T27P-C33C.

2013).[8] And like the Illinois law at issue here, the relief sought by the United States in UOCAVA cases is designed not only to provide an adequate opportunity for voters to return their ballots, through the extension of the receipt deadline, but also to avoid the risk of votes being cast after election day, by providing that ballots must be executed and sent by election day.

The Illinois statute at issue here provides a prophylactic protection for UOCAVA voters (and other mail-in voters) to ensure that they have time to receive, vote, and return their ballots in time for them to be counted. This Illinois law is not dissimilar to the statutes adopted by other states and the remedies proposed and ordered in UOCAVA cases brought by the United States.

## VI. CONCLUSION

For the foregoing reasons, the United States submits that Illinois's post-election day ballot receipt deadline is consistent with the Federal Election Day Statutes, 2 U.S.C. §§ 1 and 7 and 3 U.S.C. § 1. Such post-election day ballot receipt deadlines are a common remedial measure that the United States has sought and obtained in UOCAVA cases to ensure UOCAVA voters have sufficient time to receive, mark, and return their ballots in time for them to be counted, and are also a common prophylactic measure that states have adopted by legislation or rule to protect the right to vote of UOCAVA voters and other mail-in voters.

---

[8] Contrary to Plaintiffs' assertion, Pls.' Resp. Opp'n Defs.' Mot. Dismiss 2, ECF No. 43, Michigan does not require all ballots to be received by election day. In 2012, Michigan enacted legislation extending the "ballot receipt deadline for any [UOCAVA] absentee voter ballots . . . that were not transmitted" by UOCAVA's 45-day deadline, by "the total number of days beyond the deadline [that they were] transmitted. . . ." MICH. COMP. LAWS § 168.759a (16); 2012 Mich. Legis. Serv. P.A. 523 (S.B. 810) (effective March 28, 2013). Such "ballots received during the extension time [are] counted and tabulated for the final results of the election provided that the absentee voter ballots are executed and sent by the close of the polls on election day . . . ." *Id*. This Michigan legislation effectively adopts the post-election day ballot receipt extension remedy entered by stipulated order in earlier litigation brought by the United States to enforce UOCAVA. *United States v. Michigan*, No. 1:12-cv-00788 (W.D. Mich. Aug. 6, 2012), https://perma.cc/ESJ6-8SK8.

12

August 31, 2022

                                      KRISTEN CLARKE
                                      Assistant Attorney General
                                      Civil Rights Division

                                      REBECCA B. BOND
                                      Acting Deputy Assistant Attorney General
                                      Civil Rights Division


                                      */s/ Janie Allison Sitton*
                                      T. CHRISTIAN HERREN, JR.
                                      TIMOTHY F. MELLETT
                                      JANIE ALLISON (JAYE) SITTON
                                      HOLLY F.B. BERLIN
                                      Attorneys, Voting Section
                                      Civil Rights Division
                                      U.S. Department of Justice
                                      950 Pennsylvania Avenue NW
                                      Washington, D.C. 20530
                                      (800) 253-3931

## **CERTIFICATE OF SERVICE**

  I certify that on August 31, 2022, I filed the foregoing via the CM/ECF system, which sends notice to counsel of record.

                 */s/ Janie Allison Sitton*
               JANIE ALLISON (JAYE) SITTON
               U.S. Department of Justice
               950 Pennsylvania Avenue NW
               Washington, D.C. 20530