## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL J. BOST, *et al.*,

    Plaintiffs,

v.

THE ILLINOIS STATE BOARD OF
ELECTIONS, *et al.*,

    Defendants.

No. 22-cv-02754

Judge John F. Kness

## MEMORANDUM OPINION & ORDER

This case involves a challenge to an Illinois election statute that governs the time for counting ballots received after the date of an election. Presently before the Court is a motion by the Democratic Party of Illinois ("DPI") to intervene as a party. DPI contends that, because it possesses unique interests that are at risk, DPI is entitled to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. DPI also contends, in the alternative, that it should be permitted to intervene under Rule 24(b).

As explained below, DPI cannot meet its burden to show that its interests will not be adequately represented by the parties to the case. As a result, DPI is not entitled to intervene as of right. Separately, because allowing DPI to intervene would threaten to delay this time-sensitive case further, the Court, in its discretion, denies DPI's motion seeking permission to intervene as a party under Rule 24(b). Accordingly, the Court denies DPI's motion in its entirety. But although the Court

will not permit DPI to join the case as a party, the Court will permit DPI the option to designate its already-presented substantive arguments as those of an amicus curiae.

## I. BACKGROUND

In this election-related suit, Plaintiffs allege that the Illinois ballot receipt deadline statute (10 Ill. Comp. Stat. Ann. § 5/19-8(c)) (the "Ballot Receipt Statute"), which allows ballots to be received and counted up to 14 days after Election Day, violates both the United States Constitution and federal statutory law. 2 U.S.C. § 1; 2 U.S.C. § 7; and 3 U.S.C. § 1. (Dkt. 1.) Plaintiffs ask the Court to declare the Ballot Receipt Statute unlawful and to enjoin Illinois from receiving and counting ballots after Election Day. (Dkt. 1 at 2.)

Plaintiffs sued the Illinois State Board of Elections ("State Board") and its Executive Director, Bernadette Matthews, in her official capacity. Plaintiffs named the State Board and Ms. Matthews as defendants because the State Board is responsible for supervising the administration of election laws in Illinois. (Dkt. 1 at 4.)

DPI seeks to intervene as a party-defendant. (Dkt. 13.) DPI seeks intervention as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure and, in the alternative, permissive intervention under Rule 24(b). (Dkt. 13 at 4.) DPI contends that intervention is appropriate because Plaintiffs' challenge to the Ballot Receipt Deadline affects its voter education resource allocation and threatens to disenfranchise DPI's members. DPI states that these interests are sufficient to grant

permissive intervention as well. DPI also argues that permissive intervention would be appropriate because it will result in "neither prejudice nor undue delay." (Dkt. 13 at 12.)

Plaintiffs oppose DPI's intervention. (Dkt. 27.) Plaintiffs argue that DPI lacks a substantial interest that would be impaired by the litigation and that DPI's marginal interests are adequately represented by Defendants. (Dkt. 27 at 3–11.) Plaintiffs also argue that because DPI does not have a claim or defense that shares a common question of law or fact with the main action, permissive intervention should be denied. (Dkt. 27 at 12.)

Defendants, who are represented by the Attorney General of Illinois, take no position on DPI's motion to intervene. (Dkt. 13 at 2; Dkt. 39 at 19.)

## II.  STANDARD OF REVIEW

### A.  Intervention as of Right

To intervene as of right, a proposed intervenor must satisfy four requirements under Rule 24(a): (1) the motion must be timely; (2) the applicant must claim an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the existing parties must not be adequate representatives of the applicant's interest. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945–46 (7th Cir. 2000) (citing Fed. R. Civ. P. 24(a)). A proposed intervenor must satisfy all four requirements, *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001), and the

intervenor's failure to meet its burden as to even one of the necessary elements requires the court to deny intervention as of right. *See id.*

Intervention as of right requires a "direct, significant[,] and legally protectable" interest in the question at issue in the lawsuit. *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)). In general, something "more than the minimum Article III interest" is required for intervention as of right. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009). To satisfy Rule 24, "[t]hat interest must be unique to the proposed intervenor." *Id.* Moreover, the question of "[w]hether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Id.*

A unique interest alone is not sufficient for intervention: the proposed intervenor must also show that the interest will be "impaired or impeded" by the litigation. *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982). Whether an interest is impaired depends on "whether the decision of a legal question involved in the action would, as a practical matter, foreclose the rights of the proposed intervenors in a subsequent proceeding" as judged by the general standards of *stare decisis. Id.*

Even if a proposed intervenor has a sufficient interest that would be impaired by the action, the intervenor still must show that the existing parties are not adequate representatives of that interest. As the Seventh Circuit has explained, there are three standards for determining the adequacy of representation, and the facts

and context of each case determine which standard applies. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019). The default rule is liberal and finds that a proposed intervenor has satisfied the adequacy element if she shows that the representation of her interest *may* be inadequate. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (emphasis added). If, however, the proposed intervenor and the named party share the same goal, there is a rebuttable presumption of adequate representation, and the proposed intervenor must show "some conflict" to intervene. *Planned Parenthood*, 942 F.3d at 799. Finally, when the representative party is a "governmental body charged by law with protecting the interests of the proposed intervenors," the representation is presumed to be adequate absent a showing of "gross negligence or bad faith." *Ligas*, 478 F.3d at 799.

### B.  Permissive Intervention

Under Rule 24(b)(1), a district court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *Planned Parenthood*, 942 F.3d at 803. District courts have discretion to grant or deny permissive intervention in the interest of "managing the litigation before it." *Id.* Although the district court may not "deny permissive intervention solely because a proposed intervenor failed to prove an element of intervention as of right," it may consider "the elements of intervention as of right as discretionary factors" in weighing permissive intervention. *Id.* at 804.

## III.    DISCUSSION

### A.    Intervention as of Right

To intervene under Rule 24(a), DPI must establish that (1) the motion is timely; (2) DPI has an interest relating to the subject of the litigation; (3) the disposition of the action may impair or impede DPI's interest; and (4) Defendants are not adequate representatives of DPI's interest. Plaintiffs concede that DPI's motion to intervene is timely. (Dkt. 27 at 3.) At issue, therefore, is whether DPI has a sufficient interest in the litigation that may be impaired by the action and whether Defendants are adequate representatives of that interest.

#### 1.    Interest/Impairment

To intervene as of right under Rule 24(a), DPI must allege an interest relating to the subject matter of the action that will potentially be impaired by the disposition of the action. *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). In determining whether a party has an interest sufficient for intervention as of right, the Article III standing inquiry is instructive. *Flying J, Inc.*, 578 F.3d at 571.

DPI states that it has two interests in the litigation. First, if an injunction is granted, DPI would have to expend significant resources to educate the public about the change in law, thus diverting DPI's resources away from other causes. (Dkt. 13 at 7.) Second, an injunction barring Illinois from counting ballots received after Election Day could threaten to harm "DPI's members and constituents." (*Id*. at 8.)

6

a. *DPI's interest in its resource allocation is a sufficient interest that may be impaired by this action.*

That an injunction would have an effect on DPI's resource allocation is a sufficient interest for the purpose of Rule 24(a). If the Court were to enjoin application of the Ballot Receipt Statute, DPI would have to educate its members to ensure that they were aware of the change and could cast a timely ballot in the 2022 election. Doing so would require DPI to expend some of its limited resources that it could otherwise spend elsewhere, giving DPI a monetary interest in Plaintiffs' litigation against Defendants. *See, e.g., Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007).

Forced resource allocation thus satisfies the interest element of Rule 24(a). Although mandatory intervention is governed by Rule 24(a), the Seventh Circuit has explained that the Article III standing analysis is helpful in determining whether an interest is sufficient to allow intervention. *Planned Parenthood*, 942 F.3d at 798. Where the case involves a political party seeking to challenge or defend a voting law, the potential effect on resource allocation is sufficient to confer Article III standing. In *Common Cause Indiana v. Lawson*, for example, the Seventh Circuit held that the Democratic Party had standing to challenge a new Indiana voter registration law because the law would require it to "devote resources to combatting the effects of that law that are harmful to [its] mission." 937 F.3d 944, 950 (7th Cir. 2019) (cleaned up). Similarly, in *Crawford v. Marion County*, the Seventh Circuit concluded that the forced resource allocation was sufficient to give the Democratic Party standing to challenge an Indiana voter identification law. 472 F.3d at 951 ("[T]he new law injures

the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote.").

Plaintiffs contend that, because intervention is a highly fact-specific determination, previous cases in which courts allowed intervention do not compel intervention here. (Dkt. 27 at 4.) It is a truism that the intervention analysis is highly fact specific; but because the injuries alleged in *Common Cause* and *Crawford* are similar to DPI's alleged interest, those precedents are nonetheless instructive. As did the political parties there, DPI here has finite resources and, if Plaintiffs' suit succeeds, DPI will have to educate its voters on the change in the ballot deadline law to ensure that their votes are cast and counted. Moreover, the effect on DPI's resources is a unique interest that belongs to DPI and no other existing party in the suit. *See Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) ("The interest must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit."). DPI's resource allocation interest is thus sufficient for Rule 24(a).

But merely possessing a unique interest in the action is not, standing alone, sufficient to establish a right to intervene. Among other requirements, DPI must also show that its identified interest may be impaired by the disposition of the action. *Meridian Homes Corp.*, 683 F.2d at 203. DPI has made that showing: if the injunction Plaintiffs seek were granted, DPI's efforts to challenge it could be impaired by the decision in this action. Put another way, DPI's challenge to the injunction (if imposed) could possibly be decided based on issue preclusion, thus hampering DPI's efforts to

have the preliminary injunction overturned. Under principles of *stare decisis*, then, DPI's interest in preserving its resources would be impaired; this is sufficient to meet the impairment element of Rule 24(a).

> b.   *DPI's interest in protecting its members' interests is not sufficient for mandatory intervention.*

DPI also states that it has an interest in Plaintiffs' action because the requested injunction could potentially threaten the rights of its members and constituents by preventing ballots received after Election Day from being counted. (Dkt. 13 at 8.) Although the Seventh Circuit has recognized the associational rights of political parties in the standing context, *see, e.g.*, *Crawford*, 472 F.3d at 951, a proposed intervenor's interest must also be unique to the proposed intervenor. *Keith*, 764 F.2d at 1268. In this respect, the Article III standing analysis is useful for determining whether a proposed intervenor has sufficient interest in an action, but the uniqueness requirement precludes finding that Rule 24(a) is met merely by a showing that the proposed intervenor possesses standing to assert a claim.

DPI's interest in the interests of its members and constituents, although enough for Article III standing, is not enough for mandatory intervention under Rule 24(a). *See Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013). As the entity charged with overseeing and administering election laws, the State Board is equally interested in preserving the Ballot Receipt Statute for the voters in Illinois, whether they be Democrats, Republicans, members of third parties, or independent voters. DPI attempts to distinguish those interests by specifying its narrow interest in protecting its own members. (Dkt. 35 at 5.) But the State Board's interest in the

current action subsumes DPI's narrower interest: by defending the Illinois law that allows election officials to count ballots received after Election Day, the State Board's interest is in preserving the law for *all* Illinois voters, DPI members and constituents included. Because this interest is not unique to DPI, it is not sufficient for mandatory intervention.

### 2. Adequacy of Representation

#### a. *The intermediate standard is appropriate.*

Along with meeting all other requirements, a party that seeks to intervene in a case by right under Rule 24(a) must also show that the existing parties are not adequate representatives of the intervenor's interest in the litigation. Courts faced with this inquiry must apply a three-tiered approach that gauges the level of scrutiny based upon the specific circumstances of each case. *Planned Parenthood*, 942 F.3d at 798. Under this approach, assessing the adequacy of representation will require either: (1) a default liberal approach; (2) an intermediate approach that applies a rebuttable presumption of adequacy of representation; or (3) a strict approach that applies a flat presumption of adequacy absent a showing of gross negligence or bad faith.

Under the default liberal approach, a court should find that a proposed intervenor has satisfied the adequacy element if the intervenor shows that the representation of its interest *may* be inadequate. *Ligas*, 478 F.3d at 774 (cleaned up and emphasis added). If the proposed intervenor and the named party share the same goal, however, a rebuttable presumption of adequate representation arises, and the

proposed intervenor must show "some conflict" to intervene. *Planned Parenthood*, 942 F.3d at 799. Finally, when the representative party is a "governmental body charged by law with protecting the interests of the proposed intervenors," the representation is presumed to be adequate absent a showing of "gross negligence or bad faith." *Ligas*, 478 F.3d at 799. Before determining if the parties to this action adequately represent DPI's interest, the Court must first determine which adequacy test applies.

Plaintiffs contend that the most rigorous standard, which requires a showing of gross negligence or bad faith, should apply. (Dkt. 27 at 7.) In contrast, DPI contends that, because the parties do not adequately represent its interests, the lenient default standard should apply. (Dkt. 35 at 7.) In the Court's view, however, neither party is correct: the intermediate standard, which requires the proposed intervenor to show "some conflict," provides the appropriate metric.

Plaintiffs assert that the most rigorous standard applies because "[o]ne of the named Defendants, the Illinois State Board of Elections, is the sole statewide governmental agency in charge of administering Illinois state election law . . . ." (Dkt. 27 at 8.). That argument goes too far. As the Seventh Circuit has explained, the mere presence of a governmental entity as a named party does not automatically require the Court to apply the most stringent standard for assessing adequacy of representation. On the contrary, it is only when a governmental entity is charged by law with a legal duty to represent the interests of absentee parties that the most stringent standard applies.. *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020); *see also Wisconsin Educ. Ass'n Council*, 705 F.3d at 658–59

11

("The state is not charged by law with protecting the interests of the Employees so this standard [requiring gross negligence or bad faith] does not apply."). Although the State Board is undeniably charged with administering Illinois election law, it is not charged by law with protecting the interests of political parties. Applying the most stringent adequacy test to this case would thus be inappropriate. *See Feehan v. Wisconsin Elections Commission,* 2020 WL 7630419 (E.D. Wis.) (Order Denying Motion to Intervene) ("The Wisconsin Elections Commission 'administers and enforces Wisconsin elections law.' It appears that neither the WEC nor its members are charged with protecting the interests of a party or candidate.") (cleaned up).

But because DPI and the State Board share the same goal—namely, defending the legality of the Ballot Receipt Statute—the default standard urged by DPI is also not the correct approach. *See Wis. Educ. Ass'n Council*, 705 F.3d at 659. Instead, the alignment of interests between DPI and the State Board strongly suggests that the intermediate adequacy test applies. *Id.* DPI resists this conclusion and contends that, because DPI has a more focused interest in protecting its own members and their votes, DPI and the State Board do not share the same goal. (Dkt. 35 at 7.)

Although DPI is correct that the intermediate standard does not apply merely when a proposed intervenor and a party to the action share the same approximate goal, *Driftless*, 969 F.3d at 748, DPI and the State Board's interests are much closer than merely seeking the denial of Plaintiffs' proposed injunction. Both DPI and the State Board seek, consistent with the Ballot Counting Statute, to have timely-cast ballots counted for up to 14 days following Election Day. And, as explained above, the

mere fact that DPI's interest is narrower—limited to *its* members only—does not mean its interests are materially distinct from the State Board's. Put another way, the State Board's broader interest in the rights of all voters includes DPI's narrower interest in the rights of its members, and the State Board's effort to defend the Ballot Receipt Statute will inevitably include defending the ability of DPI's members to have their ballots counted after Election Day.

A decision of the Seventh Circuit in an analogous case supports the conclusion that DPI and the State Board share the same goal such that the intermediate adequacy standard should apply. In 2020, a district court in Wisconsin found that a state entity charged with defending a state election law is, by default, defending the narrower interests of partisan voters. If the governmental entity's mission "include[s] ensuring that the valid ballot of every voter—Democratic, Republican or other—is counted," then the governmental entity has the same goal as a political party seeking to intervene. *Feehan*, 2020 WL 7630419 at 12–13. Based on this conclusion, the Wisconsin district court applied the intermediate standard for determining adequacy of representation. *Id.* at 14.

DPI cites several cases in support of its argument that the lenient default standard applies, but that authority is distinguishable. In *Berger v. North Carolina State Conference of the NAACP*, for example, the entity seeking to intervene was the state legislature, another governmental entity authorized by state law to intervene in the litigation. 142 S. Ct. 2191, 2202 (2022) ("North Carolina has expressly authorized the legislative leaders to defend the State's practical interests in litigation

13

of this sort."). But DPI is not a state entity, of course, and no Illinois statute expressly grants DPI authority to intervene in litigation of this sort.

*Driftless* is also distinguishable. In that case, the electrical transmission companies seeking to intervene had a distinct interest from the governmental entity that was a party to the case: namely, the transmission companies owned and maintained the facility at issue, and because two of the counts in the case affected the transmission company alone, the company's interests could not be adequately defended by the relevant governmental entity. 969 F.3d at 748. In contrast, DPI does not have a property interest in votes cast after Election Day, and Plaintiff asserts no counts against DPI alone. *Driftless* does not, therefore, mandate a more lenient standard for assessing whether DPI has a right to intervene in this case.

DPI and the State Board share the same goal in this case: to defend the lawfulness of the Ballot Receipt Statute. A finding that the Ballot Receipt Statute is lawful would preserve for *all* voters—including DPI's voters—the voting-and-counting process supported by DPI. Accordingly, because DPI and the State Board share the same goal, the Court finds that the intermediate standard for determining the adequacy of representation governs DPI's motion to intervene as of right.

> b. *DPI fails to show under the intermediate standard that Defendants' representation is inadequate.*

Under the intermediate standard for determining adequacy of representation, a rebuttable presumption of adequate representation applies and requires that a proposed intervenor show "some conflict" to intervene. *Planned Parenthood*, 942 F.3d at 799. DPI fails to make that showing. In its written submissions, DPI explains

neither how its interest in the action nor its litigation strategy is at odds with the State Board. DPI argues that, because their interests are not fully aligned, it is "irrelevant that that DPI and Defendants make similar arguments in their motions to dismiss." (Dkt. 35 at 8.) But DPI's interests *are* effectively aligned with the State Board's: DPI's interests are merely narrower than the State Board's. It is thus significant–and dispositive—that DPI's arguments on the motion to dismiss are practically identical to those made by Defendants.

Because DPI fails to point to any conflict with Defendants, and because DPI's smaller circle of interests is concentric with Defendants' larger one, DPI fails to meet the requirements of the intermediate standard for resolving motions to intervene. *See Mi Familia Vota v. Hobbs*, No. CV-22-00509-PHX-SRB (D. Ariz. June 23, 2022) ("Movants fail to grapple with binding precedent imposing a strong presumption of adequacy under the instant circumstances . . . . Movants ignore that at this juncture, Defendants and Movants seek the same 'ultimate objective.' "). Because Defendants' representation of DPI's interest is adequate, DPI's motion to intervene as of right under Rule 24(a) is denied.

## B. Permissive Intervention

DPI also seeks permission to intervene under Rule 24(b). Permissive intervention may be granted to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Whether to allow permissive intervention is within the sound discretion of the district court. *Planned Parenthood*, 942 F.3d at 803. To that end, district courts may consider a wide variety of factors,

including interests of case management and the effect of intervention on the timely resolution of the action. And although courts may not deny permissive intervention solely because a proposed intervenor failed to meet the requirements for intervention as of right under Rule 24(a), the factors for intervention as of right may be considered in when considering a request to intervene by permission. *Id.* at 804.

Even if DPI has a common claim or defense, equitable considerations weigh against granting the motion for permissive intervention. Allowing permissive intervention would likely further impede the timely resolution of the action; indeed, the contested motion to intervene has already required the Court to divert resources away from the substantive arguments of the parties. Given that this is an election-year case about an election law, it is important to resolve the matter quickly so that the 2022 Illinois elections can be administered with certainty. Although DPI filed its motion to intervene promptly, to be sure, the timing of DPI's efforts does not change the fact that this case needs to be resolved promptly and that adding another party would hinder that goal.

Additional support for denying permissive intervention can be drawn from the factors for mandatory intervention under Rule 24(a), which, although not controlling, are nonetheless instructive. DPI's interest in the litigation is categorically the same as Defendants' interest. If anything, DPI's narrower interest in defending the ballot receipt statute on behalf of Democratic voters make it a less ideal candidate to defend the statute than the State Board, which is bound to consider the interests of all voters. Moreover, DPI, by its own admission, makes functionally the same legal arguments

as Defendants in its proposed motion to dismiss. Because DPI is interested only in a subset of Illinois voters yet makes functionally the same argument as Defendants in time-sensitive litigation, the Court finds that the interest of moving this case forward expeditiously is better served by avoiding the burdens inherent in adding a party at this stage. Accordingly, the Court denies DPI's motion for permissive intervention under Rule 24(b).

### C.   DPI May Proceed as an Amicus Curiae

Although the Court denies DPI's motion to intervene as a party, the Court will entertain DPI's arguments in support of Defendants' motion to dismiss if DPI wishes to proceed as an amicus curiae. Although the Federal Rules of Civil Procedure do not explicitly allow amicus curiae briefs in the district court, they also do not explicitly prohibit the practice, and some district courts have held that they can entertain arguments from an amicus. *See, e.g., Recht v. Justice*, No. 5:20 CV-90, 2020 WL 6109426, at *1 (N.D. W. Va. June 9, 2020); *Bounty Minerals, LLC v. Chesapeake Exploration, LLC*, No. 5:17cv1695, 2019 WL 7048981, at *10 (N.D. Ohio Dec. 23, 2019); *Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008); *NGV Gaming, Ltd. v. Upstream Point Molate*, LLC, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005).

In *Feehan v. Wis. Elec. Comm'n*, a case in which the district court, as here, denied a political party's motion to intervene, the court allowed the political party to make its arguments opposing injunctive relief by way of an amicus brief. 2020 WL 7630419 (E.D. Wis.) (Order Denying Motion to Intervene). Because the court's

approach in *Feehan* reasonably sought to achieve a balance between the sound application of procedural rules and affording a political party the opportunity to be heard on a matter of public concern, the Court will follow suit here. If DPI seeks to have the Court consider the arguments it has already proposed (see Dkt. 44, 45) relating to Defendants' motion for partial summary judgment, DPI may inform the Court of its preference by way of a statement filed as a separate docket entry.

## IV. CONCLUSION

DPI's motion to intervene under Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure is denied. If DPI so chooses, the Court will instead consider DPI's arguments in favor of the motion to dismiss as an amicus brief.

SO ORDERED in No. 22-cv-02754.

Date: October 11, 2022

_____
JOHN F. KNESS
United States District Judge