CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
# For the Seventh Circuit

No. 22-3034

MICHAEL J. BOST, *et al.*,

        *Plaintiffs-Appellees*,

*v.*

ILLINOIS STATE BOARD OF ELECTIONS
and BERNADETTE MATTHEWS, in her capacity
as the Executive Director of the Illinois State
Board of Elections,

        *Defendants-Appellees*.

APPEAL OF: DEMOCRATIC PARTY OF ILLINOIS,

        *Proposed Intervenor*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-CV-2754 — **John F. Kness**, *Judge*.

_____

ARGUED APRIL 20, 2023 — DECIDED JULY 27, 2023

_____

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Illinois law allows mail-in ballots postmarked on or by Election Day to be counted if received

up to two weeks after Election Day. The plaintiffs in this case contend that this extended ballot counting violates federal law and filed this suit to enjoin the practice. Within a month, the Democratic Party of Illinois ("DPI") filed a motion to intervene in defense of the law, arguing for either intervention as of right or, in the alternative, permissive intervention. The district court denied DPI's motion, and this appeal followed.

The only question before us on interlocutory appeal is whether the district court erred in denying DPI's motion to intervene. Because DPI failed to point to any reason that the state's representation of its interests "may be" inadequate, and because the district court's focus on public time and resources over DPI's individual interests was not an abuse of its discretion, we affirm.

## I. Background

Federal law establishes "[t]he Tuesday after the 1st Monday in November[] in every even numbered year" as "the day for the election." 2 U.S.C. § 7. State Congressman Michael Bost, and two voters and former presidential electors, Laura Pollastrini and Susan Sweeney (collectively, "Plaintiffs") contend that the Illinois statute allowing the counting of ballots received after Election Day contravenes this federal requirement. *See* 10 ILCS § 5/19-8(c). Together, they filed this suit against the Illinois State Board of Elections ("the Board"), which is "responsible for supervising the administration of election laws throughout Illinois," and Bernadette Matthews, in her official capacity as Executive Director of the Board.

DPI became concerned about the impact of this suit on its work as a political organization and on the voting rights of its members. To protect these interests, DPI filed a motion in the

No. 22-3034 3

district court to intervene as a defendant under Federal Rule of Civil Procedure 24. In that motion, DPI maintained that it was entitled to intervention as of right or, in the alternative, that the district court should grant it permissive intervention.

The district court denied the motion. First, the court found that DPI's interests were adequately represented by the state's defense of the statute and therefore denied its motion to intervene as of right. It next rejected DPI's argument for permissive intervention, concluding that allowing another party to intervene would divert court time and resources from an already time-sensitive case. Nevertheless, the court allowed DPI to proceed as amicus curiae if it decided to do so.

We now affirm, but take this opportunity to clarify again our standards for intervention as of right.

## II. Analysis

"Because denial of a motion to intervene essentially ends the litigation for the movant, such orders are final and appealable." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)). We consider first the arguments for intervention as of right and then those for permissive intervention.

### A. Intervention as of Right

Rule 24(a)(2) requires the court to allow intervention if the would-be intervenor can prove: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *City of Chicago*, 912 F.3d at 984 (cleaned up). We review these factors de novo, *Driftless Area Land Conservancy v. Huebsch*, 969

4                                                                  No. 22-3034

F.3d 742, 746 (7th Cir. 2020), except for the timeliness factor, which we review for abuse of discretion. *Cook Cnty., Illinois v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022), *cert. denied sub nom. Texas v. Cook Cnty.*, 143 S. Ct. 565 (2023).

This case focuses on factors two and four of the test for intervention as of right: whether DPI has any interests in the subject matter of the litigation that warrant intervention and whether the board adequately represents those interests. We take each in turn.

**1. Unique Interests**

Intervention as of right requires a would-be intervenor to have a "direct, significant and legally protectable interest in the [subject] at issue in the lawsuit." *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). We have used the shorthand "unique," *Wisconsin Education Association Council v. Walker* ("*WEAC*"), 705 F.3d 640, 658 (7th Cir. 2013), referenced by the district court, to require that the interest be "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *See Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019) (quoting *Keith*, 764 F.2d at 1268 and clarifying our use of "unique"). But we have never required a right that belongs *only* to the proposed intervenor, or even a right that belongs to the proposed intervenor *and not to* the existing party. Properly understood, the "unique" interest requirement demands only that an interest belong to the would-be intervenor in its own right, rather than derived from the rights of an existing party. *See id.* at 806 (Sykes, J., concurring).

DPI points to two interests that warrant its intervention in the lawsuit: (1) an interest as an organization that would have

No. 22-3034 5

to expend additional resources to "get out the vote," should Illinois election law change; and (2) an associational interest on behalf of its members, Illinois voters whose mail-in ballots might not be counted, should the law change. Both satisfy our requirement for a "direct, significant and legally protectable interest."[1] Each interest belongs to DPI irrespective of the role of the Board. That is what our precedent requires: a personal stake that is not dependent on the interests of an existing party.[2]

---

[1] We have held that this interest must be at least as significant as the injury required for Article III standing. *Planned Parenthood*, 942 F.3d at 798. Well-settled standing precedent supports both of DPI's asserted interests. *See Common Cause Indiana v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) (organizational interest) *and Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 188 n.7 (2008) (associational interest).

[2] Indeed, tracing the "unique" term back to its initial use reveals exactly that: We first used the term in *Keith* as shorthand for an interest that is "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *See Planned Parenthood*, 942 F.3d at 798 (quoting *Keith*, 764 F.2d at 1268). *Keith*, in turn, took this requirement from our opinion in *Wade v. Goldschmidt*, 673 F.2d 182, 185 n.5 (7th Cir. 1982). *Wade* quoted this proposition directly from a district court opinion, *In re Penn Cent. Com. Paper Litig.*, 62 F.R.D. 341 (S.D.N.Y. 1974), *aff'd sub nom. Shulman v. Goldman, Sachs, & Co.*, 515 F.2d 505 (2d Cir. 1975), which denied intervention to a party that sought to assert an interest exclusively derived from the existing defendant's rights rather than its own. As one of our colleagues recently put it, "'unique' means an interest that is *independent of* an existing party's, not *different from* an existing party's." *Planned Parenthood*, 942 F.3d at 806 (Sykes, J., concurring). While a *shared* interest can satisfy the requirements for intervention, a wholly derivative interest cannot.

While the district court properly reached this conclusion as to DPI's organizational interest, it erred in holding that DPI's associational interest was not "unique" within the meaning of our caselaw. As the district court saw it, the problem was that "the State Board's interest is in preserving the law for *all* Illinois voters, DPI Members and constituents included." But again, an interest need not belong *only* to the applicant for intervention to be "unique" as we have used it. To the contrary, while DPI and the Board each have an interest in representing some of the same voters, it is because DPI's interest is not dependent on the Board's that DPI's associational interest is "unique" and passes the first hurdle of our intervention analysis.

**2. Adequate Representation**

We turn next to the question of whether DPI's two interests are adequately represented by the Board. The burden is on DPI to show that its interests are not adequately represented. *Planned Parenthood*, 942 F.3d at 797.

**a. Tiered Tests for Adequacy**

Our case law recognizes that some litigants are better suited to represent the interests of third parties than others. Accordingly, we apply three different standards for showing inadequacy depending on the relationship between the party and the intervenor. Put simply, the stronger the relationship between the interests of the existing party and the interests of the party attempting to intervene, the more proof of inadequacy we require before allowing intervention.

Our default rule, which applies when there is no notable relationship between the existing party and the applicant for intervention, is a lenient one: the applicant for intervention

need only show "that representation of his interest [by the existing party] '*may be*' inadequate." *Planned Parenthood*, 942 F.3d at 799 (emphasis added). We apply an intermediate standard if "the prospective intervenor and the named party have 'the same goal.'" *Id*. (citations omitted). This is a higher bar, under which the applicant can only show inadequate representation by pointing to "some conflict" between itself and the existing party. *Id.* (citations omitted). And finally, our strictest test applies "when the representative party 'is a governmental body charged by law with protecting the interests of the proposed intervenors[.]'" *Id.* In those cases, because the existing party is legally required to represent the interests of the would-be intervenor, we presume it is an "adequate representative 'unless there is a showing of gross negligence or bad faith.'" *Id*. (citations omitted).

On appeal, it is uncontested that the Board (though a governmental body) is not "legally required to represent the interests of" DPI. This rules out our third and strictest adequacy test. The parties instead debate whether DPI and the Board share "the same goal," warranting application of the intermediate standard, or if instead the default rule applies.

### b. When Do Two Parties Share "The Same Goal"?

For the potential intervenor and the named party to have "the same goal," it is not enough that they seek the same outcome in the case. After all, "a prospective intervenor must intervene on one side of the 'v.' or the other and will have the same general goal as the party on that side. If that's all it takes to defeat intervention, then intervention as of right will almost always fail." *Driftless*, 969 F.3d 742, 748 (7th Cir. 2020). And so we "require[] a more discriminating comparison of the absentee's interests and the interests of existing parties." *Id.*

When we compare the interests of a would-be intervenor and an existing party, we find that they have "the same goal" only where the interests are genuinely "identical." Otherwise, we apply our lenient default rule.[3] The analysis in *Driftless* is instructive. In that case, two environmental groups sued the Wisconsin Public Service Commission, which regulated public utilities in the state. *Id.* at 744. They sought to invalidate the permits granted to three private companies to develop land. *Id.* The permit-holding corporations moved to intervene as defendants, seeking to protect their own financial interests in the validity of the permits. *Id.* We found that the companies' interests and "[t]he Commission's interests and objectives overlap in certain respects but are importantly different. The Commission is a regulatory body, and its obligations are to the general public, not to the transmission companies or their investors." *Id.* at 748. Furthermore, we noted that "the Commission *regulates* the transmission companies, it does not *advocate for* them or represent their interests." *Id.* (emphasis in original). With these two key differences, the Commission

---

[3] This broad application of the lenient default rule is supported elsewhere in our caselaw. *See WEAC*, 705 F.3d 640, 659 (applying the intermediate presumption where the goals were "exactly the same"); *Driftless*, 969 F.3d at 747 (the intermediate standard applies only where interests are "identical"); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996) (requiring "identical" interests before presuming adequate representation, and then applying the intermediate rule because the existing party's interests *entirely subsumed* the would-be intervenor's interests). We note, however, that the Supreme Court in *Berger v. North Carolina State Conference of the NAACP*, called into question whether any presumption of adequate representation is appropriate. 142 S. Ct. 2191, 2204 (2022). That is an issue for another day, as we apply the "minimal" default standard here, applying no presumption of adequacy at all. *Id.*

and the private companies did not have "identical" interests. They did not share "the same goal." And so we applied our lenient default standard. *Id.*

### c. DPI and the Board Do Not Share "The Same Goal"

The "discriminating comparison" of DPI's two interests to the interests of the Board shows that they do not "share the same goal" for Rule 24 purposes. We begin with DPI's interest as an organization: should 10 ILCS § 5/19-8(c) be enjoined, DPI would have to reallocate resources to properly educate voters on a change in law. Importantly, this interest does not overlap with the Board's interests. Nothing in the record or in the briefing suggests that the Board is interested in DPI's financial expenditures, the execution of DPI's mission, or the elements of DPI's work that will suffer if resources are diverted elsewhere. So while DPI and the Board each want the law upheld, the stakes for each of them are different.

Similarly, DPI's associational interest in representing its members is not identical to or completely included within the Board's interests. Just as in *Driftless*, the Board is a "regulatory body, and its obligations are to the general public, not to" DPI or its members alone. These responsibilities mean it has a certain amount of authority over DPI—*not* that it represents DPI's interests. So while the Board's "interests and objectives overlap in certain respects" with DPI's, in particular in their goal of having votes counted for fourteen days after Election Day as the district court noted, their interests are also

"importantly different." *Driftless*, 969 F.3d at 748. This ultimately leads us to the application of the default rule.[4]

### d. Applying the Default Rule

Under the default rule, "the applicant [must] show[] that representation of his interest 'may be' inadequate," before he is granted intervention as of right. *Planned Parenthood*, 942 F.3d at 799 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). This burden is "minimal," *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007), but it is not nonexistent. The lenient default standard is satisfied when the named party fails to make an argument before the trial court that would further the intervenor's interests. *See Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2205 (2022) (finding that representation was inadequate because of the existing party's failure to offer evidence in response to a motion for preliminary injunction and refusal to seek a stay of that injunction, both adverse to the litigation strategy sought by the would-be intervenors); *City of Chicago v. Fed. Emergency Mgmt. Agency ("FEMA")*, 660 F.3d 980, 985 (7th Cir. 2011); *Reich*, 64 F.3d at 323; *Trbovich*, 404 U.S. at 538–39 (noting risk of inadequate representation of a would-be intervenor where the interests of the existing party "may not always dictate precisely the same approach to the conduct of the litigation"). Similarly, when the existing party declines to appeal a ruling that the intervenor wants to appeal, the lenient

---

[4] The district court applied the intermediate rule because "[b]oth DPI and the State Board seek … to have timely-cast ballots counted for up to 14 days following Election Day." This is simply saying that they each want the law upheld. This kind of general similarity is insufficient to warrant application of the intermediate rule. *Driftless*, 969 F.3d at 748.

No. 22-3034                                                         11

default rule is satisfied. *See Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009). And in *FEMA*, 660 F.3d at 985, we suggested—although we did not decide—that proposing a potential conflict of interest in future settlement negotiations was enough to make a showing of inadequacy under the default rule.

DPI's briefing points to nothing to suggest that the Board's representation "may be" inadequate.[5] DPI does not point to any arguments that it would make that the Board has not already made.[6] *See FEMA*, 660 F.3d at 985; *Flying J.*, 578 F.3d at 572. And though DPI cites many out-of-circuit cases for the proposition that even *hypothetical* conflicts are enough under the default standard, DPI has not proposed even a possible conflict between itself and the Board. It is hard to imagine how we could hold that there "may be" a conflict if DPI itself cannot point to one.

DPI's sole argument for inadequate representation is that its interests diverge with the Board's. But the comparison of interests determines which of the three adequacy tests applies. This comparison alone cannot also make the showing

---

[5] DPI contends that Plaintiffs waived any argument that DPI did not meet the burden under the default rule by failing to develop the argument in their response brief. The record shows otherwise—Plaintiffs specifically addressed this argument. And at any rate, our review is de novo, and the burden is on DPI to make the minimal showing required under the default standard to show inadequacy and warrant intervention as of right.

[6] At oral argument, DPI pointed for the first time to one potential difference between its briefing below and the Board's. As laid out above, that might be enough to meet the lenient default standard. But by failing to raise this in its briefing, DPI has waived it on appeal. *Wonsey v. City of Chicago*, 940 F.3d 394, 399 (7th Cir. 2019).

required under the default rule to prove inadequacy. If that were the case, then the default rule would simply be that intervention as of right is automatic. That has never been our law.

Without any showing of conflict—potential or otherwise—DPI has failed to carry its burden and is not entitled to intervention as of right.

**B. Permissive Intervention**

We turn finally to the issue of permissive intervention. Rule 24(b)(1)(B) gives the district court the power to allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Whether to allow permissive intervention is a highly discretionary decision. "[U]nlike the more mechanical elements of intervention as of right, it leaves the district court with ample authority to manage the litigation before it." *Planned Parenthood*, 942 F.3d at 803. Because the only *required* considerations by the district court are undue delay and prejudice to the rights of the original parties, "reversal of a district court's denial of permissive intervention is a very rare bird indeed[.]" *Id.* (cleaned up). We review for abuse of discretion. *Id.*

There are many sound reasons to deny a motion for permissive intervention. We have noted in the past that adding parties is not costless, and time is not the only payment:

> Increasing the number of parties to a suit can make the suit unwieldy. … An intervenor acquires the rights of a party. He can continue the litigation even if the party on whose side he intervened is eager to settle. This blocking right is appropriate if that party cannot be

Case: 1:22-cv-02754 Document #: 89 Filed: 09/20/23 Page 13 of 17 PageID #:604
Case: 22-3034    Document: 00714261770    Filed: 09/18/2023    Pages: 17

No. 22-3034 13

considered an adequate representative of the intervenor's interests, but not otherwise.

*Solid Waste*, 101 F.3d at 508.

Here, the district court denied permissive intervention for exactly those reasons—because it would use up the court's time and resources; because this is an election-law case that needs to be streamlined and decided quickly; and because DPI's legal interests and arguments are closely aligned with those of the Board, meaning DPI's addition as a party would add little substance.

DPI pushes back on this concern about court time and resources, insisting that "by this standard, the court would never grant permissive intervention," because an additional party will always require some extra work. That misses the point—if court resources were the *only* factor, a district court could not use that to deny every motion for permissive intervention. But that is not the case here. The district court weighed the cost of diverting its resources against the minimal value DPI offered as a party—explaining that DPI's arguments varied very little from those made by the Board. That kind of weighing is squarely within the discretion of the district court and we find no abuse in its denial of permissive intervention.

### III. Conclusion

The district court's conclusion that intervention as of right was not warranted was correct, as DPI made no showing that the Board's representation of its interests "may be" inadequate. And the district court's reliance on reasonable factors to deny the motion for permissive intervention was well within its discretion. That does not preclude DPI from

14                                                             No. 22-3034

proceeding as amicus curiae, as the district court suggested, or from filing another motion, should a conflict arise. But until such a showing as to inadequate representation can be made, the judgment of the district court is

                                                          AFFIRMED.

No. 22-3034                                                             15

EASTERBROOK, *Circuit Judge*, concurring. My colleagues accurately apply this circuit's norms for evaluating attempts to intervene as of right, so I join the court's opinion. But I doubt that this circuit's standards are appropriate, so I add a few additional words.

The governing rule is Fed. R. Civ. P. 24(a)(2), which says that a district court must allow someone to intervene when that person

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Notice the difference between this language and the criteria that appear throughout the court's opinion. Rule 24 does not mention tiers of justification or whether any given interest is unique. This court has invented those additional standards, a process to which my colleagues advert at page 5 n.2.

If the need to search for unique interests, or the multiple tiers of justification, came from the Supreme Court, we would be obliged to conform. As far as I can see, however, the Justices have not told us to use the approach that now prevails in this circuit. It can't be traced to the text of Rule 24 or to the Committee Notes on that text. Nor does it have the support of scholarly sources. It is homegrown and lacks any apparent provenance.

Courts should not add layers of complexity to the Federal Rules. Legal texts sometimes set out complex rules, but to increase the complexity of a simple rule is unwarranted. Complexity adds to delay and expense, neither of which promotes justice.

Under the text of Rule 24(a)(2), the Democratic Party is entitled to intervene unless existing parties—here the State Board of Elections and its Executive Director—adequately represent its interest. The Rule does not ask whether the Board and the Party have the *same* interest, a blind alley into which some of this court's decisions deflect attention. The Board's interest is in defending and enforcing state law, while the Party's interest lies in *using* that law for the benefit of its candidates and members. But if the Board vigorously defends the statutes, that defense protects the Party's interest as well.

By the Party's lights, any private person with a concrete interest at stake can intervene in every suit against a public official, because the official's interest inevitably diverges from the private interest. Intervenors could number in the dozens, making discovery and settlement difficult if not impossible. Delay and expense would be sure to rise. Far better to apply Rule 24 as written and ask whether the original defendants "adequately represent" the putative intervenor's interests. If the answer is yes, then people potentially affected by the judicial decision can explain their circumstances (unique or not) and present their own arguments in briefs as *amici curiae*, allowing them to be heard without complicating management of the litigation.

Public officials' defense of a statute at the start of a suit does not prevent them from changing course. *Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002 (2022), holds that intervention becomes proper if the defendants drop or impair their support of the law. But the Democratic Party does not contend that the two public officials named as defendants have done that or are likely to do so. Whatever ambiguity lurks in the word "adequately"—what happens,

No. 22-3034 17

for example, if the defendants concede the plaintiffs' main contentions and offer only weak fallback arguments?—need not concern us. Everyone agrees that the public officials' defense in this suit is vigorous rather than a façade. It follows that the Party's appropriate role is as *amicus curiae*.